ANNA AUSLANDER, Appellant, v. CITY OF ST. LOUIS.—56 S. W. (2d) 778.

Court en Banc, February 8, 1933.

*Grimm & Mueller* for appellant.

*Julius T. Muench, Oliver Senti* and *Thomas F. Muldoon* for respondent.

FRANK, J.—Action to recover damages for alleged personal injuries. The case was heard by a jury. At the close of plaintiff's evidence the court sustained a demurrer thereto, and plaintiff took an involuntary nonsuit with leave. A motion to set aside the nonsuit was filed and overruled and plaintiff appealed.

The case was heard in Division Number One where an opinion written by STURGIS, C., was not adopted and the cause was transferred to court en banc where it was again argued and submitted. The opinion written by Commissioner STURGIS in division reads as follows:

"Plaintiff brings this action to recover for personal injuries received by her on account of alleged negligence of the defendant in the maintenance and operation of an automatic stop and go signal at a street crossing in St. Louis, which, on the occasion of her injury, failed to operate. It is claimed that by reason of the failure of this

signal to give a proper warning as to when to go and when to stop, the automobile in which plaintiff was riding with her husband collided with another automobile crossing the street intersection at right angles. This signaling device was such as is commonly used at street intersections to direct and permit traffic in one direction for a short time and then by a proper signal hold the traffic going in that direction for a like interval and permit that going at right angles to proceed, thus avoiding conflicting currents of travel. The signal device took the place of a traffic policeman in regulating and directing traffic. It is not claimed that the signaling device constituted an obstruction to the street or that plaintiff was injured by any collision with the signal post.

"Plaintiff testified, and the evidence stands uncontradicted, that she and her husband were traveling south on Leonard Avenue, a north and south street, in their automobile driven by the husband in the early morning about daylight; that Belle Avenue crosses Leonard Avenue at right angles and that plaintiff and her husband knew of this automatic signal placed at the middle of the intersection of these two streets for the purpose of alternately directing traffic on one street and then on the other; that on this morning as plaintiff approached the intersection she and her husband looked and discovered that the signal was not working; that there was no signal to indicate when to proceed or when not to proceed across Belle Avenue; that plaintiff supposed also that the signal was not working as to east and west traffic on Belle Avenue, but in this she was mistaken. Plaintiff and her husband therefore proceeded to cross Belle Avenue and when they were about half way across an automobile came from the east on Belle Avenue and was crossing Leonard Avenue and the two machines collided at the intersection. The driver of the other automobile coming from the east testified that from his viewpoint the signals were working and that when he attempted to cross the intersection of the two streets the signal was in his favor. Both drivers claim not to have discovered the other till too close to avoid the collision.

"It also stands uncontradicted that this automatic signal had not been properly working for some hours and that the policeman on duty in the vicinity of the accident discovered shortly after midnight, some five hours before the accident, that the light bulb which illuminated two sides of the automatic signal had burned out and was not operating, and this fact he communicated to the traffic division of the Police Department having charge of these signals. No action, however, was taken to correct the defect.

"The charge of negligence is 'that defendant knew, or by the exercise of ordinary care could have known, that this automatic traffic signal was out of repair, and that the lights therein signaling south bound traffic on Leonard Avenue (the direction in which plaintiff

was going) were not burning, but that said defendant failed and neglected to have said signal and said lights repaired, and failed and neglected to post a notice on said signal indicating that same was out of order; that the lights on the east face of said automatic signal were in operation and indicated that east and west bound traffic should proceed; that the defendant, city of St. Louis, its agents and employees, knew, or by the exercise of ordinary care could have known, that the lights on the east face of said signal were operating, while the lights on the north face of said signal were not operating, and that such condition would inevitably result in collision between intersecting vehicles, but that defendant failed to turn off all lights in said signal or to post a notice on all faces of said signal that same was out of order.'

"The case was heard by a jury and at the close of plaintiff's evidence the court sustained a demurrer thereto and was about to direct a verdict for defendant, which plaintiff averted by taking a nonsuit with leave. A motion to set aside the nonsuit was filed and overruled and plaintiff has appealed.

"It is conceded that the trial court sustained the demurrer to the evidence on the theory that in maintaining and operating this automatic traffic signal the defendant city was engaged in the performance of its purely governmental powers and functions for the benefit and safety of the general public, and that when so engaged in discharging such duties it cannot be held liable in damages for negligence.

"That defendant was negligent, according to plaintiff's evidence, in not taking more prompt steps to install a new light bulb on discovering that the automatic signal was working in one direction only, stands conceded in ruling on the demurrer. Plaintiff and her husband were not at fault in proceeding across this street in the absence of any signal to the contrary. They would, however, be required to proceed with caution and keep a lookout for travel at the intersection crossing at right angles. On the other hand, the driver of the automobile coming from the east would not be held negligent for proceeding when the signal in his direction indicated a clear crossing and invited him to proceed. The defendant, therefore, stands on the proposition that in respect to the maintenance and operation of this automatic signal it was merely performing one of its governmental functions for the benefit of the public and without profit and could not be held liable for mere negligence in so doing.

"The general doctrine of liability and non-liability of cities in respect to actions sounding in tort is stated in 43 Corpus Juris, 921, thus: 'Generally in reference to liability for torts, it is held that a municipal corporation has a dual character, the one public and the other private, and exercises correspondingly twofold functions and duties. The one class of its powers is of a public and general character, to be exercised in virtue of certain attributes of sovereignty

delegated to it for the welfare and protection of its inhabitants or the general public; the other relates only to special or private corporate purposes, for the accomplishment of which it acts, not through its public officers as such, but through agents or servants employed by it. In the former case its functions are political and governmental and no liability ordinarily attaches to it at common law, either for nonuser or misuser of the power; and such immunity from liability does not depend upon the use of the best, or of any particular, means in the conduct of the municipality's governmental business. Nor is the exemption from liability affected by the degree of negligence, whether ordinary or gross, although it has been intimated that the rule would be otherwise were the injury caused by wilful, wanton, or reckless conduct. This doctrine does not, however, relieve the municipality from its obligation to perform its governmental duties, but merely relieves it from liability for a resulting injury. In its second character above mentioned, that is, in the exercise of its purely municipal functions, or the doing of those things which relate to special or private corporate purposes, the corporation stands upon the same footing with a private corporation, and will be held to the same responsibility with a private corporation for injuries resulting from its negligence while acting within the scope of such municipal power.' [See, also, 43 C. J. 183 and 184.]

"A considerable list of cases from Missouri, as well as other states, will be found cited in the notes to the text illustrating the application of this doctrine, in some of which the city is held not liable because of being engaged in discharge of its public or governmental functions or duties, and in others being held liable because engaged in its private or corporate functions and powers.

"In Healy v. Kansas City, 277 Mo. 619, 211 S. W. 59, this is said: 'Municipal corporations are considered in two aspects. One where their functions relate to the corporate interests only, and the other where they discharge certain governmental functions. The authority for the latter is characterized as "quasi delegated sovereignty for the preservation of the public peace and safety and the prevention of crime." In performing the duties relating solely to its corporate character the city is liable for injuries caused by negligence of its agents; in performing duties relative to the latter or governmental character for the public good it is not liable.'

"What the learned author of Corpus Juris says with reference to the law on this subject generally is doubtless true in this State, to-wit, (p. 925): 'The principal difficulty which courts have experienced has been in ascertaining, clearly and accurately, the line of demarcation between public or governmental duties and private or corporate duties, and not in the determination of the question, whether, for refusal to discharge a public duty, or for the manner in which it is discharged, a corporation is or is not liable.'

"While we find no case in this State exactly in point, we are constrained to hold that the maintenance and operation by the city of automatic stop and go signals at street intersections for the purpose of regulating traffic and tending to promote safety is an exercise by the city of its governmental power, and for negligence in this respect the city cannot be held liable in damages.

"Certain tests are applied to determine whether a particular act belongs to the governmental powers, for the doing of which, even in a negligent manner, the city is not liable in damages, and it is generally held that 'the exercise of the police powers by municipal corporations is a governmental function, acting in their governmental capacity.' [43 C. J. 203.] 'Governmental functions are served by the police powers.' [43 C. J. 183.] 'The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public. A city is not liable, therefore, for the acts of its officers in attempting to enforce such regulations, even when the regulations are void. Failure to require a bond of one appointed to the police force will not make the municipality liable for his acts. Furthermore, police officers can in no sense be regarded as servants or agents of the city. Their duties are of a public nature. Their appointment is devolved upon cities and towns by the Legislature as a convenient mode of exercising a function of government, but this does not render the cities and town liable for their assaults, trespasses, or negligent acts, while acting in the performance of such public duties, unless liability is imposed by statute, or unless the municipal charter or some special statute makes members of the police force agents of the municipality.' [43 C. J. 964.]

"In Seibert v. Railroad, 188 Mo. 657, 668, 669, 672, this court considered the liability of a city in regulating travel at street intersections with railroads by means of automatic gates, and said: 'The general rule of law is, that the city has no power to place, or to cause or to permit any one to place, a nuisance or obstruction upon a public highway, which renders the highway dangerous to travelers thereon. . . . But without such express grants, the power to pass such police regulations is an inherent power necessary for the protection of the lives and persons of the citizens using the public streets. It is the duty of a city to take all such steps and precautions as are reasonably necessary to render its streets reasonably safe for use by citizens. There can be no two opinions that safety gates where railroads cross public streets are a necessary protection against accidents, and do not constitute a nuisance upon the street. . . . A safety gate at a point where a railroad crosses a public street is in no sense a private use of the street, but is clearly a police protection against injuries to persons passing along the street, in consequence of the passage of railway trains over the same, and such gates, there-

fore, cannot in any proper sense be said to be a nuisance on the street. . . . Speaking of the liability of a city for acts or neglects of its officers, with respect to the performance of duties imposed for the public benefit, and not for profit or special privileges to the municipal corporation, Cooley in his work on Constitutional Limitations (6 Ed.), page 256, says: ''And as the State is not responsible for the acts or neglects of public officers in regard to the duties imposed upon them for the public benefit, so one of these corporations is not liable to private suits for either the non-performance or the negligent performance of the public duties which it is required to assume, and does assume, for the general public, and from which the corporation itself receives neither private nor special privilege.'' . . . If, therefore, the city of St. Louis had erected these crossing gates for the benefit of the general public, there can be no question that the municipal corporation would not be liable to a private action such as this.'

''Many cases in this State illustrate and establish the rule that cities are not liable for mere negligence in the performance of their governmental or police power. Thus in Zummo v. Kansas City, 285 Mo. 222, 225 S. W. 934, it is held that the operation of a hospital by the city is a governmental function, for the negligent operation of which the city cannot be held liable; and in Behrmann v. St. Louis, 273 Mo. 578, 201 S. W. 547, the collection of garbage by the city was held to be a governmental function and that the negligent operation of a garbage wagon for such purpose created no liability; and in Stater v. Joplin, 189 Mo. App. 383, it is held that the operation of a police patrol is a governmental function, for the negligent operation of which the city was held not liable; and in Cassidy v. St. Joseph, 247 Mo. 197, 152 S. W. 306, the operation of street cleaning wagons was held to be a governmental function, for the negligent operation of which the city is not liable; and in McKenna v. City of St. Louis, 6 Mo. App. 320, the operation of a hose carriage in connection with the fire department was held to be a governmental function, for the negligent operation of which the city was held not liable. [See, also, in this connection Trower v. City of Louisiana, 198 Mo. App. 352; Worley v. Town of Columbia, 88 Mo. 106; Ulrich v. St. Louis, 112 Mo. 138, 20 S. W. 466; Sprague v. City of St. Louis, 251 Mo. 624, 158 S. W. 16.]

''Plaintiff, in support of her right to recover damages herein, cites a number of cases holding the city liable for placing obstructions in its streets under the guise of traffic signals, resulting in injury to travelers thereon. Thus in Aaronson v. City of New Haven, 110 Atl. 872, 12 A. L. R. 328, a traffic signal had been put in the street in such a manner that it was held in place by its own weight. In some manner it was displaced from its original position and toppled over in the street and a motorist collided with it. It was held that the mere

placing of the signal at the intersection was not negligence, but that, having placed it there, the city was required to exercise reasonable supervision to see that same did not become a mere obstruction in the street, and that a failure to do this would make it liable for injuries resulting therefrom.

"In Vicksburg v. Harralson, 136 Miss. 872, a plaintiff was injured when his automobile came in contact with a 'bumper,' a device about five inches high placed in the street as a warning to drivers of the danger of collision at the intersection. There, too, a verdict for plaintiff was upheld on the theory that the 'bumper' was a dangerous device or obstruction to the street.

"In Titus v. Bloomfield, 80 Ind. App. 483, it was held that a concrete block placed in the center of a street intersection for the purpose of guiding traffic without any light thereon was a defect in the street within the meaning of that term and rendered the city liable for damages due to a collision therewith.

"There are also cases in which liability against cities has been upheld where a collision with the obstruction occurred because of the absence of proper lighting of the street or of the signal. Thus in Town of Hobart v. Casbon, 142 N. E. 138, the city had erected a traffic signal in the center of the street consisting of a concrete base and an upright standard bearing a light. In some manner the upper lighted portion of the signal became broken, leaving no light on the concrete base and rendering it a mere obstruction, and the plaintiff drove his machine into it at night while trying to avoid another car. It was held that the city was liable for its negligence in failing to repair the light.

"And in Wells v. Kenilworth, 228 Ill. App. 332, the plaintiff at night collided with a signal post where the defendant had neglected to turn on the lights on the post, and it was held that the question whether this device constituted a dangerous obstruction to the street was a question for the jury.

"These cases, however, are to be distinguished from the present case in that in each of them the plaintiff's injury resulted from a collision with the signal itself, which the court held to constitute an obstruction to the street, rendering it unsafe for travel thereon. The defendant's liability in such cases, therefore, was based on a failure of the city to keep its streets in a reasonably safe condition for travel thereon by reason of defects in the physical condition of the same. In the present case plaintiff's injury was in no way caused by a collision with the traffic signal, and it is not claimed that such signal itself constituted an obstruction to travel on such street or rendered the same unsafe. The injury here resulted from plaintiff's collision with the automobile of another traveler using this same street intersection, and plaintiff's complaint is not that the collision was caused by this signal itself, but only that such collision

could and would have been averted had the defendant kept the signal light working so as to have warned the other party of plaintiff being on the crossing.

"There is a difference, however, between the physical condition of a street and its use by the public. The keeping of a street in a condition reasonably safe for travel thereon has reference to its physical condition and is a different matter than the regulation of traffic on such street. The one relates to the corporate or proprietary powers of the city, while the other relates to its governmental or police powers. This distinction is pointed out in 43 Corpus Juris, 996, as follows: 'The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a corporate duty, and for a breach of such duty an action will lie; but making and enforcing ordinances regulating the use of streets brings into exercise governmental, and not corporate, powers, and the authorities are well agreed that for failure to exercise legislative, judicial or executive powers of government, there is no liability.' This distinction is also mentioned in Healy v. Kansas City, 277 Mo. 619, 211 S. W. 59, where it is said: 'But the maintenance of good order in the park, the prevention of dangerous conditions there caused by gathering crowds or by the lawless or imprudent conduct of individuals, is a governmental function. The two cases are as distinct from each other as is the case of the city allowing a dangerous hole to remain in a street differs from the failure of a police officer to arrest a bully who is painting the town red.' In Hansen v. Berry (N. D.), 209 N. W. 1002, this distinction is pointed out thus: 'In our opinion, a holding that a municipality is liable on account of the unsafe condition of the streets, where such unsafety is due to no physical imperfection, would involve the modifications of well-established principles of law.'

"This court held in Ex parte Cavanaugh, 313 Mo. 375, 380, 280 S. W. 51, that the establishment of 'automatic signals and one-way streets' is among the things which the city of St. Louis may provide as a police regulation for the safety and convenience of its inhabitants.

"The evidence here is that the care and supervision of these signals was entrusted to the police department of the city and that although the defect in the operation of the signal was discovered by the policeman on duty in that locality and reported to the head of that department, no prompt action was taken to remedy the defect, so that the negligence was that of the police department of the city government. For such negligence the defendant city is not liable and the trial court correctly directed a verdict for defendant. The judgment is therefore affirmed."

On re-examination of the above opinion, we are satisfied with the conclusion reached therein and hereby adopt said opinion as the opinion of the court en banc.

The judgment of the trial court is accordingly affirmed. *Ellison, Atwood, White* and *Henwood, JJ.,* concur; *Ragland, J.,* and *Gantt, C. J.,* dissent.