GILBERT W. PREWITT, by next friend, CLARENCE H. PREWITT, v. CITY OF ST. JOSEPH, Appellant.—70 S. W. (2d) 916.

Division One, April 19, 1934.

*John S. Boyer* and *John P. Randolph* for appellant.

*Melvin J. Duvall* and *W. J. Boyd* for respondent.

1230

GANTT, J.—Action to recover $20,000 for injuries sustained by plaintiff when a motorcycle on which he was, riding ran against a traffic sign at the intersection of Alabama and Lake Streets in St. Joseph. Judgment for $600. The motion of plaintiff for a new trial on the ground of inadequacy of the verdict was sustained. The motion of defendant for a new trial on the ground that plaintiff was not entitled to recover was overruled. Defendant appealed from the order granting plaintiff a new trial.

The petition charged negligence as follows: (1) placing, fastening and maintaining the sign on the street; (2) maintaining the sign on the street in an obscured condition, and insufficient lighting of the intersection.

The answer admitted that St. Joseph was a city of the first class; that Alabama and Lake were public streets within said city; that the defendant placed, fastened and maintained the sign on the street, and denied the other allegations of the petition.

In substance, the answer then alleged that the sign was placed and fastened on the street as part of a general plan adopted by the Board of Public Works of the city for the purpose of regulating traffic; that it tended to eliminate collisions at the intersection; that the danger, if any, from so using the sign was incident to and inherent in the plan, and that defendant was not liable for injuries sustained by vehicles colliding with the sign.

The answer further alleged that plaintiff was guilty of contributory negligence by failing to observe where he was driving and by operating the motorcycle at an excessive rate of speed in violation of an ordinance of the city.

The general direction of Alabama Street is east and west, and the general direction of Lake Street is north and south. There is a park-

way along the center off Alabama. The north side of Alabama is seventeen and one-half feet wide, and is used by westbound travelers. On the east line of the intersection of Lake and Alabama and half way between the curb lines of the westbound part of Alabama there was fastened to the surface of the street the traffic sign in question. About three years before plaintiff was injured, the sign was located at said intersection by the street department of the city under the direction of the Board of Public Works as part of a general plan for the regulation of traffic. This type of traffic sign was in general use in the city. It also was in general use in cities of the United States. They were so used for the promotion of safety and the facilitation of traffic. The sign is oval in shape, twelve by eighteen inches at the base, five or six inches in height, and was fastened securely to the street. The word "Stop" on the east side of the sign was in red letters with a white background. The balance of the sign was red. It was a warning to westbound travelers about to enter the intersection.

At about one A. M., January 1, 1930, plaintiff was driving a motorcycle west on Alabama Street at eighteen to twenty miles an hour. He was not familiar with the streets of St. Joseph. At the time cars were parked along the north side of Alabama and immediately east of the intersection. Plaintiff, on approaching the intersection, did not observe the sign. He ran the motorcycle against it, which caused him to be thrown from the motorcycle and injured.

The intersection was lighted by street lights. However, there was a conflict in the evidence as to how well it was lighted. It was a much-used and dangerous intersection. At the time, the sign had the appearance of rusty iron. It had been in that condition for some time. Furthermore, after rains debris would be around the sign. In due course the street sprinkler washed away the debris.

■ Defendant contends that traffic is regulated under the governmental power of the city and for that reason the city is not liable in damages for negligence in the performance of this governmental duty. We have so ruled in Auslander v. City of St. Louis, 332 Mo. 145, 56 S. W. (2d) 778.

■ Formerly traffic in a city was directed and regulated solely by the police department. But the advent of paved roads and the motor have so increased travel and the speed of vehicles that it is necessary to regulate traffic at almost all of the street intersections in a city. It is beyond the power of the police department to do so through the limited personnel of the department. In this situation efforts have been made to substitute for the policeman a signal or sign device as a means of regulation. It appears from the evidence that cities have used different types of signs for this purpose. The sign in question was selected by the Board of Public Works to be used for the regulation of traffic at dangerous places and intersections.

Of course, the sign was an obstruction to travel. It was so intended. It was to prevent injury to persons and damage to property resulting from the unregulated movement of vehicles through the intersection. It may be that an occasional vehicle ran against the sign. If so, and it was moving at a reasonable rate of speed, the damage, if any, could not be serious. Furthermore, the protection to the public by such regulation greatly outweighs the injuries caused by carelessly driving against the sign. As a means of regulation the plan adopted by the board was reasonable.

We do not understand the plaintiff to contend that the regulation of traffic is not a governmental function. He argues that the city in locating the sign at the intersection acted in its corporate capacity for the reason no ordinance was enacted authorizing the Board of Public Works to adopt said plan of traffic regulation.

It is provided in the charter of cities of the first class as follows:

"The mayor and common council shall have power within the city, by ordinance, *not inconsistent with the Constitution or any laws of this state or of this article*: . . .

"XII. To have control and power over the streets, sidewalks, alleys, landings, public grounds and highways of the city; to open, alter, widen, extend, establish, grade, pave or otherwise improve, clean and keep in repair the same; to prevent and remove all encroachments thereon or obstructions thereof; to put drains and sewers in the same and to regulate the building of vaults under the sidewalks." [Sec. 6171, R. S. 1929.]

Under this authority ordinances with penalties may be enacted with reference to the speed of vehicles, the physical condition of the street proper and the obstruction thereof by persons and property. There is no authority given to enact ordinances with reference to the direction of traffic. However, it is further provided in the charter as follows:

"There is hereby established in every city in this state, now or hereafter organized and existing as a city of the first class, a board of public works to consist of three members . . ." [Sec. 6420, R. S. 1929.]

"Said board of public works shall have exclusive control of all public buildings and streets and alleys and properties of said city, except public libraries, parks, parkways and boulevards, and shall be the custodian of all said buildings and properties, except those hereinbefore excepted." [Sec. 6421, R. S. 1929.]

". . . Hereafter no permit for entering upon, disturbing or occuping for any purpose whatever the streets, alleys or public grounds of any such city shall be issued except by the board of public works hereby created. . . ." [Sec. 6426, R. S. 1929.]

We think these sections authorized the Board of Public Works to regulate, when necessary, the movement of traffic on the streets.

It is direct authority from the Legislature, and no ordinance authorizing the board to regulate traffic was necessary. It would not be contended that the police department was without authority to direct traffic unless an ordinance was enacted authorizing it to do so.

It follows that the city is not liable for the performance of its governmental duty, to regulate traffic by the location and maintenance of the sign at the intersection. It was proper to grant a new trial but not for the reasons stated.

The judgment is affirmed and the cause remanded. All concur, except *Hays, J.,* absent.