JOSEPHINE MENGEL, Appellant, v. CITY OF ST. LOUIS.—111 S. W. (2d) 5.

Division One, December 14, 1937.

*J. M. Brown* and *Barker, Durham & Drury* for appellant.

*Edgar H. Wayman* and *Jerome Simon* for respondent.

FERGUSON, C.—Plaintiff was injured when an automobile, operated by her son-in-law, in which she was riding as a guest, collided with a concrete block or slab located "midway in the intersection" of two of the public streets of the city of St. Louis. She brought this action against the city for damages for the injuries so sustained. The petition alleges and prays damages in the sum of $25,000. The action was filed, and trial had, in the Circuit Court of the City of St. Louis. The verdict of the jury and the judgment of the court, in accordance therewith, was for the defendant, and plaintiff has appealed.

Plaintiff assigns error in certain instructions given on the part of defendant but, as respondent here, defendant contends that its instruction in the nature of a demurrer to the evidence, offered at the close of all the evidence, should have been given, that plaintiff did not make a submissible case, and that therefore error, if any, in instructions is immaterial. Necessarily we first consider this contention.

The parties have agreed upon, and jointly approved, a short form of a bill of exceptions setting forth the facts, which they agree, the evidence tends to prove. This, we are advised, is done pursuant to our Rule 6, which provides: "To enable this court to review the action of the trial court in giving and refusing instructions it shall not be necessary to set out the evidence in the bill of exceptions; but it shall be sufficient to state that there was evidence tending to prove the particular fact or facts. If the parties disagree as to what fact or facts the evidence tends to prove, then the testimony of the witnesses shall be stated in narrative form, avoiding repetition and omitting immaterial matter."

It is stated that there was evidence tending to prove the following facts. "That on the morning of August 3, 1932, at about the hour of one A. M., the plaintiff, a woman about sixty-three years of age, was seated in the rear seat of an automobile sedan being operated by one Maurice Hyman, her son-in-law, westwardly along Page Boulevard in St. Louis and, approaching and passing the intersection of Page Boulevard with Newstead Avenue, both being improved open and public streets of the city of St. Louis. That the automobile in which plaintiff was seated collided with a concrete slab or block of concrete about four or five feet square and about eighteen inches high, located midway in the intersection, as a result of which collision plaintiff suffered substantial injuries."

"It was conceded that the concrete slab constituted the base whereon had previously been located a light standard, or traffic signal.

That during the day or evening of August first an automobile had collided with the light standard, knocking it down and destroying it. That subsequent to the first accident, and during the night of August first, or the day of August second, the damaged light standard had been removed by the city, leaving the concrete base in the intersection.''

''There was evidence offered on behalf of the city tending to show that on the night and at the time of the accident to plaintiff the obstruction was properly lighted and of such visibility as reasonably to warn traffic of the presence of the obstruction, and evidence offered on behalf of the plaintiff tending to show that the obstruction was not properly lighted, by reason of which it constituted an obstruction to traffic.

.''Page Boulevard is a street sixty feet wide and accommodates several streams of traffic. There was conflicting evidence as to the presence of other traffic at the time and scene of the accident.

''On behalf of the defendant, there was evidence tending to show that at the time of the accident to plaintiff the automobile occupied by her was being operated at a speed of about forty miles per hour and in excess of thirty miles per hour prescribed by ordinance, and that the driver could have seen the obstruction had he kept a proper lookout. On behalf of the plaintiff there was evidence tending to prove that the car was being operated at a lawful rate of speed and that the collision was not due to negligence on the part of the driver of the automobile.''

The petition alleges, that at the date and time of the collision the slab or block of concrete constituted ''an obstruction in the center of the intersection;'' that ''it was dark at said intersection, and there were no lights on'' said concrete block or slab ''or other warning . . . and that plaintiff had no knowledge, notice or warning that said obstruction was in the street;'' that ''defendant knew, or, by the exercise of ordinary care, could have known'' that the concrete block or slab ''was in the center of the intersection and was likely to be run into by motorists, especially at night, in time, before plaintiff was injured, by the exercise of ordinary care, to have placed warning lights thereon at night . . . or otherwise have given reasonable warning or notice to motorists of the presence of the concrete slab in the street,'' but ''negligently failed to provide reasonable and proper lights on, at or near said obstruction at night, or to reasonably warn motorists of the presence of said obstruction in the intersection;'' and that the collision and plaintiff's injuries ''were directly due to and caused by the negligence of defendant'' in the respects stated. The answer was a general denial and a plea of contributory negligence on the part of plaintiff in that by the ''exercise of ordinary care for her own safety'' she could have

discovered "the existence of the alleged concrete slab in the intersection" in time to thereafter have "warned the driver of the automobile in which she was riding" thereof and "should have cautioned said driver . . . to swerve his automobile and use his brakes," etc., "so as to avoid" the collision.

It will be noted that "it was conceded that the concrete slab . . . four or five feet square and about 18 inches high . . . midway in the intersection . . . constituted the base whereon had previously been located a light standard, or traffic signal." This collision occurred in the nighttime, at about one o'clock A. M., August 3. The light standard which had stood on this concrete base was struck and knocked down by an automobile "the night of August 1st or the day of August 2nd;" and thereupon ("on the night of August 1st or the day of August 2nd") "the damaged light standard had been removed by the city leaving the concrete base in the intersection." The respondent city now takes the position that a submissible case was not made and that its refused instruction in the nature of a demurrer to the evidence should have been given "because in placing and maintaining the signal for the regulation of traffic the city was in the exercise of its governmental function," citing and relying upon Auslander v. City of St. Louis (en banc), 332 Mo. 145, 56 S. W. (2d) 778, and Prewitt v. City of St. Joseph, 334 Mo. 1228, 70 S. W. (2d) 916.

The Auslander case recognizes and reiterates the rule, which defendant city would invoke in this case, that "cities are not liable for mere negligence" in the exercise of governmental power or the performance or nonperformance of governmental functions. [See cases there cited.] However, the Auslander case is, on the facts, clearly distinguishable from the present case. In that case the "light bulb which illuminated" the north and south sides of an automatic electric "stop and go signal" had "burned out." This traffic signal was placed and maintained by the city of St. Louis "at the middle" of the intersection of two streets "for the purpose of alternately directing traffic on one street and then the other." The light by which the east and west traffic was regulated was operating. "In the early morning about daylight" plaintiff was traveling south in an automobile driven by her husband. As they approached this intersection they discovered that the north and south signal light "was not working" and "supposed" that the east and west signal light was "also not working," in which they were mistaken. They therefore proceeded into the intersection and when "about half way across" came into collision with an automobile traveling west across the intersection. The driver of the westbound automobile testified that when he reached the east side of the intersection the signal "was in his favor." "Both drivers claimed not to have discovered

the other until too close to avoid the collision.'' Plaintiff claimed that the collision was caused ''by reason of the failure of the signal to give a proper warning'' and it was ''not claimed that the signaling device constituted an obstruction to the street, or that plaintiff was injured by any collision with the signal post.'' The opinion sums up the case in this way: ''The injury here resulted from plaintiff's collision with the automobile of another traveler using this same street intersection, and plaintiff's complaint is not that the collision was caused by this signal itself, but only that such collision could and would have been averted had the defendant kept the signal light working so as to have warned the other party of plaintiff being on the crossing.

''There is a difference, however, between the physical condition of a street and its use by the public. The keeping of a street in a condition reasonably safe for travel thereon has reference to its physical condition, and is a different matter than the regulation of traffic on such street. The one relates to the corporate or proprietary powers of the city, while the other relates to its governmental or police powers.'' It was held that the maintenance and operation of the traffic signal was ''an exercise by the city of its governmental power'' and that the city was not liable in damages for negligence ''in this respect.''

The Auslander opinion cites and refers to cases wherein the plaintiff's injury resulted from collision with a signal post or device, or a part of such device, which had become a mere obstruction in the street. The following are illustrative of such cases. The town of Bloomfield, Indiana, erected a concrete post, twelve inches square and forty inches high, in a street intersection, as a traffic guide, but no light or other signal was placed thereon ''for the guidance of,'' or to give notice to, ''persons using the streets at the intersection of which it stood.'' It was held, in Titüs v. Town of Bloomfield, 80 Ind. App. 483, 141 N. E. 360, that the concrete post was ''a defect in the condition of the street'' within the meaning of a statute relating to actions for damages against a city for injury ''resulting from any defect in the condition of any street.'' The facts upon which plaintiff's case was based, in Aaronson v. City of New Haven, 94 Conn. 690, 110 Atl. 872, are, that the defendant city ''maintained, at . . . the center of an intersection . . . a so-called silent policeman consisting of a heavy circular base and an upright post, surmounted by a sign and a light,'' that the device was ''anchored'' or held in place only by its own weight; that it ''toppled over and lay in the traveled part of the (street) . . . and constituted a dangerous obstruction'' in the street; that after notice of this obstruction in the street the defendant city permitted it to remain, unguarded in the traveled portion of the street until plaintiff's auto-

mobile "ran over it" causing damage to the automobile for which the action was brought. It was held that the traffic signal device described, so long as it remained in position, did not constitute a defect in the street and that placing and maintaining it at that point, though it was anchored or held in place only by its weight, "was not an actionable breach of the legal duty" which the city "owed to travelers" on the street, but that the city was liable if after notice that the signal standard had fallen into the traveled portion of the street and become an obstruction in the street it failed and neglected, within a reasonable time thereafter, to remove the obstruction. The facts in evidence in Town of Hobart v. Casbon, 81 Ind. App. 24, 142 N. E. 138, are almost identical with the facts of the instant case. In that case the evidence showed, that the defendant, the Town of Hobart, had placed a "traffic post with concrete base at the intersection of the two streets:" that the traffic post "had been broken off, leaving the concrete base or abutment" in the intersection; that "the city had no light upon or barricade around the concrete block;" and that driving through the intersection "during the night" plaintiff's automobile struck this concrete block. As in the instant case, plaintiff charged negligence "in permitting such obstruction to remain in the street without barricades, danger signals or lights thereon." The appellate court held that a case against the city was made out and that the verdict for plaintiff was "well sustained by the evidence." Referring to these and other like cases cited therein the opinion in the Auslander case says: "These cases . . . are to be distinguished" in that "liability in such cases . . . was based on a failure of the city to keep its streets in a reasonably safe condition for travel thereon by reason of defects in the physical condition of the same."

The Prewitt case cited by defendant is distinguishable on the facts and the issues therein involved. In that case plaintiff claimed to have been injured when his motorcycle ran against a traffic sign at a street intersection. The sign was of a type in general use in the defendant city "and in general use in cities of the United States" for the regulation and facilitation of traffic and the promotion of safety. A reading of the opinion in that case will, we think, readily demonstrate that it properly holds that in placing and maintaining the sign at the intersection the city was acting in its governmental capacity. Further it appears the contention was made in that case that the city should be held to have "acted in its corporate capacity for the reason no ordinance was enacted authorizing the board of public works to adopt said plan of traffic regulation." The opinion rules that contention holding that the board of public works of a first class city was authorized by statute to regulate traffic on the streets and that the plan adopted by such board in this instance was

reasonable. The case is not applicable to the facts of the instant case and we do not deem it an authority supporting defendant city's contention on its demurrer to the evidence herein.

We think that under the facts it sufficiently appears that the instant case involves the alleged breach of the defendant city's corporate duty to keep its streets in a reasonably safe physical condition for travel thereon and that the liability sought to be imposed is not based upon the manner in which the city performed or exercised a governmental power or function. It is not claimed that the collision occurred by reason of the improper operation or nonoperation of a traffic signal. When the signal light post which had stood on this concrete base was removed leaving this concrete block in the street, it could hardly be, and is not, claimed that the concrete block, itself and alone, in any way served or operated to regulate traffic. It then became a mere obstruction in the street which if unguarded or unlighted, or not properly lighted, would likely be, especially in the nighttime, a physical hazard to vehicles on the street at that point. Our conclusion is that a submissible case was made. This brings us to a consideration of appellant's (plaintiff) assignments of error in instructions given at defendant's request.

■ ■ Plaintiff's instructions 2 and 3 predicated recovery by plaintiff and liability of defendant on either of two theories: Instruction 2; that defendant had either actual or constructive knowledge of the condition existing in the street after the traffic signal post and light were removed leaving the concrete base in the center of the intersection unlighted and unguarded, as shown by plaintiff's evidence, "in time, by the exercise of ordinary care to have placed a warning light, or lights; or other warning" "at or on" the concrete slab but "negligently failed to do so;" or, Instruction 3; that if "prior to the collision" defendant "placed a light on said concrete slab," as defendant had evidence tending to show, but "such light . . . was not reasonably sufficient to apprise motorists at night of such obstruction, taking into consideration circumstances which might arise and be reasonably anticipated by a reasonably prudent person." As we have noted the stipulation shows there was a conflict in the evidence as to whether "the obstruction" was "properly lighted." The trial court then gave the following instruction (numbered 8) for defendant:

"The Court instructs the jury that the City of St. Louis is not an insurer of the safety of persons traveling on its streets, nor is it bound to keep such streets in an absolutely safe condition for passage by persons traveling thereon, nor entirely free from every kind of obstruction; nor does every obstruction in or upon such streets, even though it causes injury, alone afford the *insured* party a right to recover damages from the City of St. Louis. The duty required

of the City of St. Louis is that it shall use ordinary care to keep such streets in a reasonably safe condition for travel thereon. *If, therefore, you find and believe, from all the facts, conditions and circumstances in the evidence that the defendant, City of St. Louis, exercised ordinary care to place a warning signal on the concrete slab at the intersection of Page and Newstead Avenues, and said intersection was in a reasonably safe condition for passage thereon at the time and place mentioned in the evidence, then your verdict must be for the defendant,* the City of St. Louis." (Italics ours.)

It will be noted (refer to last italicized portion), that defendant's Instruction 8 tells the jury that if they find that the defendant city "exercised ordinary care to place a warning signal" (of any kind, a light or other kind, without regard to its location or visibility, and whether or not it was maintained to the time of the accident) "on the concrete slab at the intersection" and that "said intersection" (which was 60 feet wide) "was in a reasonably safe condition for passage thereon at the time" then their verdict "must be for defendant." The instruction is calculated to convey to the jury the impression, and is susceptible of the construction, that their verdict must be for the defendant if they find that at any time prior to the accident the city placed any kind of a warning signal on the concrete slab, without regard to its sufficiency, or its visibility at night, and that there was a safe passage way over the intersection, which was sixty feet wide. So viewed the instruction operates to eliminate the ground or theory of recovery submitted by plaintiff's Instruction 3, supra, and is in conflict with that instruction. In any event, in view of the two separate and distinct grounds of recovery submitted by plaintiff's instructions 2 and 3, the instruction, purporting, as it does, to cover the whole case and directing a verdict for defendant, is calculated to confuse and mislead the jury. The instruction first deals in generalities telling the jury, that the city "is not an insurer of the safety of persons" using the streets, that it is not required to keep its streets "in absolutely safe condition for passage . . . thereon, nor entirely free from every kind of obstruction," and adds, "nor does every obstruction . . . even though it causes injury, alone afford the *insured* party a right to recover damages from the city." The issues in this case were simple, and an instruction predicating the defensive facts relied upon and the law applicable thereto would it seems have sufficed. The instructions being the law of the case would not the jury consider itself authorized to make an application of these general and abstract propositions of law, though by the instruction they are not specifically applied to the facts in evidence, thus giving the jury a roving commission in that respect. Appellant denominates this part of the instruction an "abstract homily." But even this part of the in-

struction is confused by the use of the word "insured," which we have italicized. Appellant says, "it injects the idea that plaintiff was insured ("the insured party") and that "the insured party" (or an insured party) cannot recover against a city if his injuries were caused *"alone"* by an obstruction in the street without some negligence on the part of the city other than failure to properly guard the obstruction being shown. Respondent says, that the word "insured" should have been "injured," was "a mere typographical error, which was readily discoverable," and therefore could not have been prejudicial. However when we consider that the instruction commences with a declaration about insurance, that is, that the city is not an insurer, and consider too the prevalence in these items of numerous and varied types of accident and liability insurance contracts and the common knowledge thereof, can we say that a jury of laymen must as a matter of course have known and have readily discerned that "the insured party" should read "the injured party?" We have been referred to cases where it was clearly apparent from the context of the instruction that the word "plaintiff" had been inadvertently used for "defendant," or visa versa, and wherein it was properly held that the error could not have been prejudicial. Such cases are not however in point here.

Appellant makes numerous complaints and criticisms, in some respects we are inclined to think properly, of the burden of proof instruction and certain cautionary instructions given on the part of defendant. At another trial these criticisms, some of which are obviously well made, can, and doubtless will be, obviated. So-called cautionary instructions are ofttimes repetitious, and have, at times, become "too much in the nature of a lecture to the jury as to duty to defendant, and not to their duty upon the whole case." [Unterlachner v. Wells (Mo.), 278 S. W. 79, 83.] We observed, in Wolfson v. Cohen (Mo.), 55 S. W. (2d) 677, 681; "Cautionary instructions are within the discretion of the trial court . . . however" they "should be used with caution. A party is not entitled to such instructions as a matter of right." As to the burden of proof instruction, with its preliminary statement declaring that; "The charge laid by plaintiff against the defendant is one of negligence. Negligence is a legal wrong, and, therefore, in this case is not presumed," etc., attention is directed to our discussion in Nelson v. Evans, 338 Mo. 991, 93 S. W. (2d) 691, 694. In Mitchell v. Dyer (Mo.), 57 S. W. (2d) 1082, 1083, and Rouchene v. Gamble Const. Co., 338 Mo. 123, 134, 89 S. W. (2d) 58, 63, we said: "A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is

required to do. A plain declaration to that effect will be easily understood by a jury. The more the instruction is elaborated, the more complex it becomes and the more it is likely to be misunderstood. . . . Certainly all that ought to be required, in addition to such a statement . . . should be a clear definition of preponderance of evidence," etc.

On account of errors in the instructions on the part of defendant the judgment of the trial court must be reversed and the cause remanded. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.