*520
 
 Bell, J.
 

 The single question presented is whether the amended petition states facts sufficient to constitute a cause of action against the defendant.
 

 It is universally agreed that at common law a municipal corporation is not liable for failure in the performance of governmental functions. However, for many years liability has been imposed upon municipalities of this state, in connection with the care, supervision and maintenance of streets.
 

 Section 3714, General Code, reads as follows:
 

 “Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, * * * sidewalks, :X: * * within the corporation, and shall cause them to be kept open, in repair, ..and free from nuisance.”
 

 The petition in this case is bottomed upon the claim that the defendant created and was maintaining a nuisance in Garfield avenue on September 29, 1942, when a collision occurred between the two automobiles, and that such nuisance was the proximate cause of plaintiff’s injury. If, under the averments of the amended petition, the city did create and was maintaining a nuisance at that time and place, which was the proximate cause of plaintiff’s injury, then plaintiff’s amended petition states a cause of action — otherwise not.
 

 In this case it should be kept clearly in mind that there is no claim of any defect either in Garfield avenue or in Oakwood avenue. Therefore, the question, for decision under Section 3714, General Code, is limited to whether the defendant was maintaining a nuisance by reason of the two stop signs on Garfield avenue.
 

 The gist of plaintiff’s claim is that two
 
 unauthorised
 
 stop signs were placed on Garfield avenue, a designated main thoroughfare, at or near its intersection with
 
 *521
 
 Oakwood avenue, which was not so designated; that the municipality by • its agents and employees had placed the two stop signs upon the wrong street and thereby created, and for several years prior to the collision had maintained, a nuisance at that intersection; and that at the time of the collision she was aware that the stop signs were on Garfield avenue and drove into the intersection in reliance upon the stop signs as giving her the right of way.
 

 Ordinance No. 5068 is not set out and we have no knowledge of all the provisions thereof.
 

 There is no averment in the petition that council did not authorize the placing of the two stop signs on Garfield avenue at or near its intersection with Oak-wood avenue. The petition does aver that the stop signs were unauthorised, and were placed upon the
 
 wrong street.
 
 No facts are averred which warrant’ those allegations.
 

 Plaintiff by the allegations of the amended petition draws the inference and asks us to do likewise, that, because Garfield avenue was designated a main thoroughfare and Oakwood avenue was not, the placing of stop signs upon Garfield avenue at or near its intersection with Oakwood avenue was
 
 unauthorised
 
 and that the stop signs were placed upon the
 
 wrong street.
 

 A municipality has constitutional as well as legislative authority to control traffic upon its streets, to determine at what intersections traffic shall be required to stop, and to place stop signs at intersections where the municipal authority deems it reasonable and proper.
 

 Reference is made in plaintiff’s brief, to the Uniform Traffic Act (Sections 6307-1 to 6307-110, both inclusive, General Code).
 

 The petition in this case clearly discloses that Garfield avenue was designated as a main thoroughfare
 
 *522
 
 in 1938. The effective date of the Uniform Traffic Act was September 6, 1941. Therefore, the provisions of that act are inapplicable here. Even if applicable, the Uniform Traffic Act does not extend or enlarge the liability of a municipality under Section 3714, General Code.
 

 A municipal corporation has a dual character, the one public or governmental, the other private or corpo-. rate. In its governmental capacity it performs
 
 governmental
 
 functions,- and in its corporate capacity it performs
 
 corporate duties.
 

 Speaking generally, a municipality is not liable for negligence in the exercise of a governmental function. See
 
 Aldrich
 
 v.
 
 City of Youngstown,
 
 106 Ohio St., 342, 140 N. E., 164, 27 A. L. R., 1497;
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210, 52 A. L. R., 518;
 
 Selden
 
 v.
 
 City of Cuyahoga Falls,
 
 132 Ohio St., 223, 6 N. E. (2d), 976.
 

 On the other hand, a municipality is liable for negligence in the performance of, or failure to perform, a corporate duty. See
 
 City of Hamilton
 
 v.
 
 Dilley,
 
 120 Ohio St., 127, 165 N. E., 713;
 
 Yackee, Admx.,
 
 v.
 
 Village of Napoleon,
 
 135 Ohio St., 344, 21 N. E. (2d), 111, and
 
 Kocher
 
 v.
 
 City of Barberton,
 
 140 Ohio St., 240, 42 N. E. (2d), 977.
 

 Considerable confusion may be found in American case law upon this subject, partially due to the failure to distinguish between governmental functions and corporate duties. This court heretofore has recognized and applied that distinction.
 

 If one will read the cases above referred to with that thought in mind, no difficulty will be experienced in harmonizing those pronouncements.
 

 It is quite clear that the General Assembly created a corporate duty by the passage of Section 3714, General Code, for failure in the performance of which the municipality is liable.
 

 
 *523
 
 In construing Section 3714, G-eneral Code, this court has confined liability to cases which involve the construction or maintenance of the street, or physical obstructions or hindrances to traffic. We are now asked to extend that well understood and almost universally accepted doctrine.
 

 There is a well recognized difference between the condition of a street and its use by the public. This distinction is pointed out in 43 Corpus Juris, 996, Section 1783, as follows:
 

 "The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a
 
 corporate duty,
 
 and for a breach of such duty an action will lie; but making and enforcing ordinances regulating the use of streets brings into exercise .governmental, and not corporate, powers, and the authorities are well agreed that for a failure to exercise legislative, judicial, or executive powers of government, there is no liability. ’ ’
 

 That text is supported by many cited authorities, to a few of which attention will be directed.
 

 In
 
 Town of Gainesboro
 
 v.
 
 Gore,
 
 131 Tenn., 35, 173 S. W., 442, it is said:
 

 "The making or enforcing of ordinances or other provisions, regulating the
 
 use
 
 of streets, involves governmental, and not corporate, functions. There is no liability on the part of the municipality for an omission of duty in this respect, unless such liability is imposed by statute.” (Italics ours.)
 

 In
 
 Hanson
 
 v.
 
 Berry,
 
 54 N. D., 487, 209 N. W., 1002, it is said:
 

 "In our opinion, a holding that a municipality is liable on account of an unsafe condition of the streets, where such unsafety is due to no physical imperfection, would involve the modification of well-established principles of law.”
 

 
 *524
 
 In the case of
 
 Powell
 
 v.
 
 City of Nashville,
 
 167 Tenn., 334, 69 S. W. (2d), 894, 92 A. L. R., 1493, the court, in dealing with a question similar to the one here involved, held:
 

 ‘ ‘ Complaint alleging that city failed to enforce traffic ordinance by maintaining stop sign at street intersection, causing collision when automobile in which deceased was riding entered thoroughfare without stopping, held not to state cause of action against city on theory that city maintained nuisance.”
 

 In the case of
 
 Auslander
 
 v.
 
 City of St. Louis,
 
 332 Mo., 145, 56 S. W. (2d), 778, it was held:
 

 “1. A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly twofold duties and.functions. * * *
 

 "3. The maintenance by a city of automatic traffic signals at street corners is the exercise of its police powers and it is not liable for injury caused to an automobilist by negligent failure to maintain in efficient condition such traffic signals.”
 

 In
 
 Kirk
 
 v.
 
 City of Muskogee,
 
 183 Okla., 536, 83 P. (2d), 594 (traffic signal case) it is said at page 537:
 

 "The plaintiffs attempt to bring the present case within the rule of municipal responsibility for the condition of its streets, but it can readily be seen that neglect in the regulation of traffic does not necessarily have anything to do with the physical condition of streets. There is no doubt that the regulation of traffic is a governmental function, and that no liability accrues on the part of a municipality for negligence in the performance of said function. See
 
 Dorminey
 
 v.
 
 City of Montgomery,
 
 232 Ala., 47, 166 So., 689;
 
 Cleveland
 
 v.
 
 Town of Lancaster,
 
 267 N. Y. Supp., 673, 239 App. Div., 263;
 
 Martin
 
 v.
 
 City of Canton,
 
 41 Ohio App., 420, 180 N. E., 78;
 
 Auslander
 
 v.
 
 City of St. Louis,
 
 332 Mo., 145, 56 S. W. (2d), 778;
 
 Murphy
 
 v.
 
 Incorporated Village of Farmingdale,
 
 252 App. Div., 327, 299
 
 *525
 
 N. Y. Supp., 586;
 
 Carruthers
 
 v.
 
 City of St. Louis (Mo.),
 
 111 S. W. (2d), 32;
 
 Shaw
 
 v.
 
 City of New York,
 
 1 N. Y. Supp. (2d), 311;
 
 City of Rome
 
 v.
 
 Potts,
 
 45 Ga. App., 406, 165 S. E., 131;
 
 W. H. Powell, Admr.,
 
 v.
 
 City of Nashville,
 
 167 Tenn., 334, 69 S. W. (2d), 894, 92 A. L. R., 1493, and annotation at page 1495; Berry (7 Ed.), Automobiles, See. 4289. Compare
 
 Mengel
 
 v.
 
 City of St. Louis (Mo.),
 
 111 S. W. (2d), 5;
 
 Mayor and Aldermen of City of Vicksburg
 
 v.
 
 Harralson,
 
 136 Miss., 872, 101 So., 713.”
 

 No case has been found wherein a municipality has' been held liable for the manner in which it regulated traffic upon the streets or erected traffic signs at intersections.
 

 We think that the distinction between the failure of a city to keep its streets in a safe condition as regards physical defects therein and the failure or neglect in regulating traffic thereon is clear and definite.
 

 It would seem quite plain that if a municipality owes no duty to erect traffic signals at street intersections, or that it is not liable for negligence in respect thereto, it could not create a nuisance by erecting and maintaining such signals.
 

 As we view the situation, the plaintiff is here attempting to bring the instant case within the statute which creates municipal responsibility for the condition of its streets. Neither reason nor authority sustains such a position.
 

 It is our conclusion that the averments of the petition are insufficient to warrant an inference that the stop signs were
 
 unauthorised,
 
 or were wrongfully placed upon Garfield avenue in violation of an ordinance; that the regulation of traffic upon the streets of a municipality is a governmental function; that no duty with respect thereto is prescribed by Section 3714, General Code; and that a traffic signal placed at an intersection by the municipality is not a nuisance
 
 *526
 
 even though it does not accomplish its purpose. It follows that an action for damages for personal injury against a municipality cannot be maintained, based upon the claim that such municipality created and maintained a nuisance by placing stop signs in close proximity to an intersection, even though the injured person claims such stop signs were placed upon the wrong street and that she was misled thereby into the belief that she had the right of way.
 

 In the
 
 Kirk case, supra,
 
 the court cited the case of
 
 Martin
 
 v.
 
 City of Canton,
 
 41 Ohio App., 420, 180 N. E., 78. In the
 
 Martin case
 
 the same Court of Appeals as in the instant case considered the question of liability of a municipal corporation by reason of the maintenance of a defective traffic signal at an intersection and held that the municipality was not liable. We can discern no reason why that holding should not have been followed in the instant case, and, in failing so to do, the Court of Appeals erred.
 

 There is another and equally cogent reason for the conclusion that plaintiff’s petition is fatally defective. The demurrer admits all allegations of fact well pleaded but does not admit conclusions of law. Ordinarily the question of proximate cause is a question of fact but where, as here, there is no dispute as to facts that question becomes a question of law.
 

 The amended petition fails to allege whether Beal did or did not stop his automobile on Garfield avenue in compliance with the command of the stop sign before proceeding into the intersection. -
 

 If Beal did stop his car before entering the intersection and thereafter drove his car into collision with plaintiff’s car while she was driving through the intersection, then the collision was the result of Beal’s negligence.
 

 On the other hand if Beal failed to obey the stop sign before entering the intersection then he was guilty of
 
 *527
 
 negligence
 
 per se
 
 and the collision was equally the result of Beal’s negligence.
 

 In either event under the allegations of the amended petition the
 
 sole proximate cause
 
 of the collision was Beal’s negligence and the trial court was warranted in sustaining the demurrer upon that ground.
 

 In view of our conclusions, the judgment of the Court of Appeals must be and hereby is reversed, and the judgment of the Court of Common Pleas should be and hereby is affirmed.
 

 Judgment reversed.
 

 Zimmerman, Matthias and Hart, JJ., concur. Weygandt, C. J., Williams and Turner, JJ., dissent.