## ADAMS v. KANSAS CITY.

### No. 21986.

Kansas City Court of Appeals.

Missouri.

April 5, 1954.

David M. Proctor, Henry Arthur and T. James Conway, Kansas City, for appellant.

Jensen, West & Cochrane, William W. Cochrane, Jr., Richard C. Jensen, Kansas City, for respondent.

DEW, Judge.

Respondent, the plaintiff, brought this action to recover damages for personal injuries and obtained a verdict and judgment for $4500. Defendant has appealed.

No error is here raised as to the pleadings, the evidence, or the amount of the verdict. Briefly, the facts are that on March 20, 1951, at about 5:00 p. m., the plaintiff, a woman 50 years of age and employed as a nurse at a nursing home on the east side of Main Street, just north of 36th Street in Kansas City, Missouri, walked across the street from her place of employment to a concrete safety zone or island situated west and alongside of the southbound street car tracks, preparatory to boarding a southbound street car at that point which would take her to or near her home. The street car was approaching from the north and she had ample time to reach the safety zone. She had many times boarded the street car from this zone, but always near the south end which she would reach by crossing at the intersection. She had never noticed the crack in the concrete which caused her to fall. From the evidence the concrete platform or safety zone appeared to be about five inches high, three

or four feet wide, and about the length of an average street car. At the north end there was a thick concrete block or abutment three or four feet high, from the bottom of which ran a triangular concrete slab northward to turn the traffic around the safety zone.

Stepping upon the concrete safety zone or platform a few feet from its north end and seeing the car approaching, the plaintiff started to walk southward on the platform and feeling something brush her right leg, she looked down and saw a small dog which had followed her from the nursing home across the street. She turned slightly to the right when she saw the dog and in doing so she moved her right foot slightly and stepped into a wedge-shaped hole or crack in the concrete surface of the safety zone, throwing her backward off the concrete and causing her to land on her back on the street between the platform and the street car, which had by that time stopped at the loading zone. The wheels of the street car did not touch her, but she received serious injuries as described in the evidence. At the time of the accident plaintiff was wearing flat-heeled Oxford shoes as used by nurses. The crevice into which she stepped was about four or five inches wide and about two inches deep and near the east or street car side of the platform surface. There were other cracks and holes in the platform and evidence of previous repairs in the concrete, shown in photographs introduced.

■ Defendant's first assignment of error is that the court erred in overruling its motion for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence. As to such motion made at the close of plaintiff's evidence, any error made in overruling the same was waived by defendant by introducing evidence thereafter in the case. Ellis v. Kansas City Public Service Co., Mo.App., 203 S.W.2d 475.

The ground assigned for error in overruling the motion for a directed verdict at the close of all the evidence is that the maintenance of the safety island in evidence was a governmental function of the city, in the performance of which it was not liable for negligence. The theory advanced by the defendant is that the safety zone where plaintiff fell was a traffic device designed to divert traffic to the right or to the left of the place reserved for pedestrians to board or to alight from street cars. The maintenance of such device, it is urged, was the exercise of a governmental function of the city. Several decisions of our Supreme Court are cited by defendant to support this contention.

Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778, cited by defendant, was a case in which automatic signal lights maintained by the city to direct traffic at an intersection of two streets were out of repair and failed to operate properly causing plaintiff to proceed south across a street intersection and collide with a vehicle crossing the street at the same time from the east. The distinction between governmental functions and corporate functions of municipalities is there exhaustively treated and explained. The Supreme Court en banc held that the city was not liable for the negligence complained of since the alleged liability grew out of the direction of traffic on the public streets, a duty owed to the public generally as an attribute of its sovereignty and not relating to its special or private corporate purposes which are not accomplished through its public officers, as such, but through its agents and employees.

Again, in Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32, the plaintiff's basis for a claim of negligence, among others, was the placing and maintaining of a black line on the paved street, which line caused the driver of the car in which she was riding to follow it and over a curb onto a parking space where he collided with a steam shovel there located. The court held that the collision was not caused by any imperfection in the pavement itself, but was due to the misdirection of the mark or to the driver's misinterpretation of the mark as to the direction of traffic, growing out of a function of the city of a governmental character, in the performance of

which the city was not liable for any negligence.

The plaintiff in Prewitt v. City of St. Joseph, 334 Mo. 1228, 70 S.W.2d 916, was injured when he rode his motorcycle against a traffic sign about six inches high, five or six inches wide at its base and fastened to the pavement. There was evidence that the sign had become dirty, rusty and difficult to see. It was held that the location and maintenance of the signal constituted regulation of traffic, a governmental duty of the city for which it was not liable in negligence.

In Blackburn v. City of St. Louis, 343 Mo. 301, 121 S.W.2d 727, traffic buttons or markers were maintained to direct traffic, and they had become rusty, unpainted, sunken and difficult to see. Plaintiff was injured when an automobile collided with one of the buttons, causing the car to injure plaintiff. The court held the maintenance of the markers designating and directing traffic was a governmental function and not a corporate one, and that the city was not liable for the negligence charged.

In Mengel v. City of St. Louis, 341 Mo. 994, 111 S.W.2d 5, a concrete slab 18 inches high and four or five feet wide, in the middle of a street intersection, placed there by the city as a standard for a street sign, was held to be a mere obstruction in the street when the sign had been broken down and removed by the city the previous day and a motorist ran into the standard in the night time. The court said such conduct was a breach of the city's duty to keep its streets in a reasonably safe condition for travel, rather than any breach of duty in its function of directing traffic. The city was held liable.

■ We believe the foregoing cases can all be distinguished from the case at bar. The space occupied by the safety zone or island where the plaintiff in the instant case tripped, was, nevertheless, a part of the street, reserved, designed and used exclusively for and by pedestrians in waiting for, boarding and alighting from street cars. This would be true whether or not there was a platform covering the space so provided for such use. The fact it was elevated a few inches above the remainder of the street and thus itself incidentally contributed to the diversion of vehicular traffic around it, would not change its primary purpose and use. In the cases cited by defendant and discussed above, the objects which caused the collisions were obstructions in the highway used and intended solely for the purpose of directing traffic. In the instant case the defective condition of the surface of the safety zone or platform reserved for pedestrian use was not related to the provisions made to direct or to divert vehicular traffic around the zone. "It is the duty of a city to take all such steps and precautions as are reasonably necessary to render its streets reasonably safe for use by citizens". Auslander v. City of St. Louis, supra, 332 Mo. at page 151, 56 S.W.2d at page 781. We believe the failure of the city to maintain in a reasonably safe condition for pedestrian use that part of its street consisting of the platform in question designed for such use, as described in the evidence, was a breach of its corporate duty, for which it is liable in negligence. We hold that the trial court did not err in refusing defendant's motion for a directed verdict at the close of all the evidence.

■ Defendant's next contention is that the court erred in giving plaintiff's Instruction IV because it misdirected the jury "in telling them that plaintiff was not guilty of contributory negligence if they found only that the defect was not obviously dangerous, and by omitting the element of plaintiff's duty in using the safety island". It was further urged that the instruction conflicts with defendant's Instruction VII. Plaintiff's Instruction IV was as follows:

"The Court instructs the jury that if the jury finds and believes from the evidence that the safety island referred to in evidence was dangerous and not reasonably safe for persons to walk upon and pass over, if so, yet unless you find and believe from the evidence that said safety island was visibly and

obviously dangerous and not reasonably safe, by reason of its said condition, so that an ordinarily prudent person under like or similar circumstances as Inez Adams in the exercise of ordinary care for their own safety, would not have attempted to walk upon and pass over it, then you are instructed that Inez Adams was not guilty of such contributory negligence as would bar recovery in this case".

Plaintiff's Instruction I required, as one of the facts necessary for a verdict in her favor, that the jury find she "was at all times exercising ordinary care for her own safety". Her Instruction IV, above set out, required the jury to find, in order that she be found innocent of contributory negligence, that the safety island was dangerous, but not so visibly and obviously dangerous that "an ordinarily prudent person under like or similar circumstances as Inez Adams in the exercise of ordinary care for their own safety, would not have attempted to walk upon and pass over it * * *". Defendant's Instruction VI required a finding that plaintiff was in the exercise of ordinary care to authorize a recovery from defendant for negligence in the maintenance of its streets, sidewalks and safety zones. Defendant's Instruction VII told the jury that if they found defects existed in the safety island, and that the plaintiff "in the exercise of ordinary care", saw or could have seen such defects, and "in the exercise of ordinary care" could have known such condition "rendered said safety zone dangerous and unsafe for use by one in the exercise of ordinary care for her own safety, in time to have stepped over or around the same in safety by the exercise of ordinary care, but negligently failed so to do, * * *", and plaintiff was injured by such failure, the verdict should be for the defendant. Defendant's Instruction IX defined "ordinary care."

By the reading of all the instructions together, it appears clear that the jury was not permitted by the instructions to find in plaintiff's favor on the issue of contributory negligence in disregard of her own duties in the use of the safety island. Defend-

ant states that a correct statement of law would be that she "had a right to use the safety island without being guilty of contributory negligence if it was not so glaringly defective that no reasonably prudent person would use it". The use of the words "visibly and obviously" instead of "glaringly" and "in the exercise of ordinary care for her own safety" instead of "such care and caution as would have been exercised by a person of ordinary prudence" under like circumstances, cannot be said to have misled or misdirected the jury. Such expressions in an instruction were approved in Asbury v. Fidelity National Bank & Trust Co., 231 Mo.App. 437, 100 S.W.2d 946; Kiefer v. City of St. Joseph, Mo.Sup., 243 S.W. 104, 100. We find defendant's objections to Instruction IV without merit.

Judgment affirmed.

All concur.