ALTHEA A. FARRINGTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   March 19, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Way*, Defect in highway·   *Negligence.   Street Railway.*

Where a city street, paved with asphalt, has a reserved space in the centre twenty-
five feet wide, which was laid out as a part of the street " for the use of street
railways and for grass " and is so used, and this reserved space is a few inches
above the level of the street at either side and is bounded by a granite curbing
seven inches wide, and at the intersections of cross streets there are cross overs
paved with stone, for the passage of teams, of the same level as the reserved
space, a curved corner stone which is the termination of the curbstone at one of
these cross overs, three inches higher than the asphalt surface of the street
where it starts from the straight curbing of the reserved space, two and a
quarter inches above the asphalt at another point nearer a rail of the tracks of
a street railway, and one and three quarter inches higher than the asphalt at
the place where the asphalt and the paving of the cross over come together,
if it has no imperfection and is constructed and laid in the usual manner, cannot
be found to be a defect in the highway, and if a woman passenger in an open
electric car, in alighting at night from the running board opposite the fourth seat
from the rear of the car, steps on such a corner curbstone and turns her ankle,
she cannot recover against the corporation operating the car for her injuries
thus caused, because the stopping of the car for her to alight at such a place is
no evidence of negligence.

TORT for personal injuries alleged to have been incurred when alighting from a car of the defendant in which the plaintiff was

a passenger, at the time and place and in the manner described in the opinion.    Writ dated November 18, 1905.

In the Superior Court the case was tried before *Bishop*, J. The facts shown by the evidence are stated in the opinion.    At the close of the evidence the defendant asked for certain rulings and instructions, of which the first was that upon all the evidence the plaintiff could not recover, the second was that upon all the evidence the plaintiff was not in the exercise of due care, and the third was that upon all the evidence the defendant was not negligent.    The judge refused to make these and other rulings requested by the defendant, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,500.    The defendant excepted to the refusals and to the instructions given.

The judge reported the case for determination by this court. If either of the defendant's requests numbered 1, 2 or 3 should have been given, judgment was to be entered for the defendant; otherwise, judgment was to be entered upon the verdict.

*F. H. Chase*, (*R. M. Bowen* with him,) for the defendant.

*S. J. Elder*, (*C. A. Barnes* with him,) for the plaintiff.

HAMMOND, J.    This is an action to recover for injuries sustained by the plaintiff in alighting from one of the defendant's open cars at 8.45 in the evening of July 28, 1905, at or nearly opposite the intersection of Garrison Street with Huntington Avenue in Boston.    Through this part of the avenue there is a reserved space twenty-five feet wide (including curbstones) which was laid out in 1894 as a part of the avenue, " for the use of street railways and for grass."    This reserved space is a few inches above the level of the street on either side, and is bounded with granite curbing seven inches wide set three feet and six inches from the inside or gauge line of the rail.    At the intersection of the various cross streets and opposite Garrison · Street are paved " cross overs " for teams, higher than the asphalt surface of Huntington Avenue.    The curbstones above mentioned terminate at these " cross overs " in curved corner granite blocks which turn inwards towards the rails and come within seven inches of the nearest rail.    The corner block nearly opposite the northerly sidewalk of Garrison Street, being the block upon which the plaintiff testified she stepped

on alighting from the car, was three inches higher than the asphalt surface of Huntington Avenue next to the straight curbing of the reserved space, two and a quarter inches above the asphalt at another point nearer the rail, and one and three quarter inches higher than the asphalt at the place where the asphalt and paving came together, which point was a little less than two feet from the rail. These differences in the height of the top surface of the granite block above the surface of the street we understand are not caused by any unevenness in the surface of the stone, but by the gradual ascent of the crossing as it goes toward the rails of the defendant.

The avenue and cross over, including the granite curbing, were constructed by the city of Boston, upon which municipality rests the duty of keeping the streets in repair. The physical condition had not changed from the time of the construction up to the time of the accident. There is no evidence that there was any imperfection in the work itself. It was just exactly what it appeared to be. No contention was made that it was not in good repair.

As to the accident the plaintiff testified that she and a friend were seated upon the fourth seat from the rear of the car, she being at the left of her friend who was at the right hand end of the seat; that as the car approached Garrison Street she signalled to the conductor, who rang the bell and the car came to a full stop. " She stepped past her friend, down upon the running board with both feet, and holding to the forward grab rail by her left hand, stepped down with her right foot to the ground, as she supposed, and when her toe struck the ground she let go her hold and her foot slipped and turned over, and she fell to the ground and broke her leg." She further testified that " after her fall she was right close to the car, so that she could touch the running board with her hand; that she was helped up and to the nearest corner of Garrison Street and then looked back, and for the first time noticed that the rear of the car projected out into the paved cross over for teams." On cross-examination she testified that " the car had arrived at Garrison Street and that she was at Garrison Street where she wanted to stop, but she did not notice particularly where the car had stopped, or that it had not gone far enough along, and that

she supposed it had stopped where it always did ; that she looked down as she stepped off, but that the car was brilliantly lighted and she could not see the ground and supposed the car was at the brick crosswalk; that she should judge, looking at the plan, that her foot landed at about the middle of the curved block, on the edge ; that when she stepped down she stepped out some inches beyond the running board to clear it, as one naturally would do ; that as she alighted her heel slipped off the curb, which turned her ankle, and she fell. That during all this time the car was stopped still, the conductor being on the rear platform ; that there were very few people in the car ; that there was no crowding or pushing, or anything to hurry her. That she did not notice the exact position of the car until after she had reached the sidewalk and looked back."

The evidence was conflicting both as to where the car stopped and as to where the plaintiff stepped as she alighted. Several witnesses for the defendant testified that the plaintiff stepped on the brick crosswalk, which had been constructed by the defendant within the reserved space, a few feet from the paved cross over, and that she safely reached the walk and received her injury after she had fully alighted. But the jury had the right to accept as true the account given by the plaintiff.

" No contention was made that the plaintiff could recover against the defendant on account of any dangerous condition in the reservation, curbstone or street other than the corner block itself, and her counsel stated to the jury that he made no such claim, and admitted that if the plaintiff had safely alighted from the car and afterwards tripped on the straight curbstone or other obstruction she could not recover."

The presiding judge refused to rule, as requested by the defendant, that upon all the evidence the defendant was not negligent, and submitted that question to the jury, with instructions that "if the plaintiff satisfied them that the accident occurred at the point at which she claimed it did, and [they] were satisfied that the place was a dangerous one to alight upon and amounted to a defect in the highway ; and that the defendant knew that it was a dangerous place, or by the exercise of reasonable care might have known that it was so, and yet stopped its car there

in such a way as to amount to an invitation to the plaintiff to alight there, then she might recover."

We are of opinion that a jury ought not to be allowed to find this corner stone, taken in connection with its surroundings, to be a defect in the highway. It is a very common construction where a sidewalk, or any other reservation elevated as this was above the rest of the street, is crossed by a street or way, public or private. In the construction of a street it is good workmanship to have the sidewalk raised above that part of the surface of the street which lies next to the sidewalk, and speaking generally such a method of constructing a sidewalk is almost universal. There must be some way of getting from one level to the other, when the continuity of the sidewalk or raised reservation is interrupted by cross streets; and the way adopted here is and for generations has been one of almost universal use. Upon the evidence it must be held as matter of law that the way was not defective. *Burke* v. *Haverhill*, 187 Mass. 65, and cases cited. Compare also *Raymond* v. *Lowell*, 6 Cush. 524, 532, 533.

Nor is there any evidence of the negligence of the defendant. The car was stopped so that the plaintiff in alighting stepped upon a spot properly worked for public travel. It is to be noted that the street is in no sense a passenger station for the safety of which the defendant is responsible. The defendant had nothing to do with the construction of the street at the spot upon which the plaintiff testified she stepped. As a rule its duty, so far as material to the question under discussion, is met when it stops its car so that the passenger in alighting steps upon a part of the street properly worked for public travel. And such seems to have been the view of the presiding judge, for he instructed the jury that in order to bring in a verdict for the plaintiff they must find among other things not only that the place where the plaintiff alighted was dangerous but that it "amounted to a defect in the highway." This is not a case where by reason of changes in the surface of the street while undergoing repairs, or from some other cause, the street is temporarily defective and a passenger in alighting is likely to step on the defect. In such a case the defendant may be held to reasonable care, either by way of warning or otherwise, to see

that the passenger safely alights.     There was nothing in the appearance of the plaintiff to indicate to the conductor that she had not the ordinary capacity to care for herself, or that it would be any more dangerous for her to alight than for any other person.     The defendant had the right to assume that the plaintiff knew generally of the construction of sidewalks.     There was no greater difference between the surface of this stone above the asphalt at the place upon which the plaintiff alighted than may occur between the level of two cobble stones.     The injuries to the plaintiff were the result of turning her ankle.     To require a street railway company to make so minute an examination of a properly worked street as a decision for the plaintiff in this case would call for, would be to impose upon the defendant a burden at once unreasonable and practically impossible of performance.

It follows that the first and third requests should have been given ; and therefore, in accordance with the terms of the report, there is to be

*Judgment for the defendant.*