JAMES WELCH *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     January 8, 9, 1913. — February 27, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Way,* Public: reservation for street railway.   *Street Railway.   Negligence.*

Where the board of officers authorized to lay out streets in a city that had accepted St. 1894, c. 324, laid out a street and ordered that there be reserved in the middle of it "a special space for the use of street railways and for grass, of the width of twenty-five feet, with breaks therein as shown on" a certain plan referred to, and in accordance with the designations of the plan a cross walk, paved and flagged, was constructed at one of the "breaks" indicated as a means

of passage for pedestrians over and across the reservation and the railway tracks thereon, the ends of the cross walk terminating at the curbing that marked the side lines of the reservation, the cross walk is a part of the public street, and a street railway company, operating its cars on the tracks laid in the reservation, in running them over the cross walk has no rights which are either exclusive of or paramount to the rights of pedestrians passing thereon. In the present case it was held to be a question for the jury whether the cross walk was one of the " breaks " provided for in the layout.

In an action against a street railway company by a pedestrian who, while making use of a cross walk over a reservation for the use of street railways laid out in the middle of a street under authority of St. 1894, c. 324, § 1, was injured by a car of the defendant operated on its tracks in the reservation, the question, whether the character and condition of the cross walk, and the facts that it manifestly was intended for the use of pedestrians only and that it passed over the tracks of an electric street railway laid in the space lawfully reserved for such railways, required any special care on the part of the plaintiff, is for the jury, who also can consider the fact that the defendant and its servants were bound to take notice of the existence and character of the cross walk.

TORT for personal injuries sustained on the evening of November 11, 1906, when the plaintiff was walking across Huntington Avenue in Boston upon a paved cross walk about opposite the Hotel Nottingham between Dartmouth Street and Exeter Street and was struck by an electric street car of the defendant that was being operated on the reserved space in the middle of Huntington Avenue. Writ dated January 4, 1907.

In the Superior Court the case was tried before *Brown,* J., who at the close of the evidence ordered a verdict for the defendant. The plaintiff alleged exceptions to the ordering of the verdict, and also to the exclusion of certain evidence offered by the plaintiff in rebuttal. The facts necessary for an understanding of the decision of the court are stated in the opinion.

*T. H. Buttimer & W. B. Grant,* for the plaintiff.

*W. G. Thompson,* (*G. E. Mears* with him,) for the defendant.

SHELDON, J. We do not deem it necessary to recapitulate the evidence set out with needless detail in this long record. We are clearly of opinion that the jury would have had a right to find that the plaintiff's injury was due to negligence in the operation of the defendant's car, and that the plaintiff was in the exercise of due care, if he had the ordinary rights of a traveller on a public way upon the crossing where he then was. The considerations that have been urged in behalf of the defendant are of weight, but they present questions of fact for the jury rather than of law for the

court. If, however, the defendant's right to run its cars over this crossing was exclusive, or was paramount to the right of the plaintiff to use it as a cross walk, a different question would be presented as to both the issues.

Huntington Avenue was duly laid out by the street commissioners of Boston on January 5, 1895. Before that time St. 1894, c. 324, had been accepted by the city council of Boston. Section 1 of that act authorized the board of officers laying out any street to "reserve between the side lines thereof . . . special space for the use of street railways, whether operated by animal power, electricity or any other motive power except steam, . . . and special space for trees, grass and for planting." Acting under this authority, the street commissioners in the layout ordered that there be "reserved . . . in the middle of said avenue, a special space for the use of street railways and for grass, of the width of twenty-five feet, with breaks therein as shown on the plan" marked "Huntington Avenue, May 1, 1894, Pierre Humbert, Jr., City Surveyor," and deposited in the office of the city surveyor of said city. The defendant had taken all steps necessary to the legal use of this reservation for its cars on the day of the accident.

The plaintiff's injury occurred while he was crossing the defendant's tracks over this reservation, upon a cross walk which passed over the reservation from side to side thereof. The cross walk was paved, and had flagging between the defendant's tracks; and the jury could find that it had been constructed and was designed and adapted to be used by pedestrians for crossing the reservation and the defendant's tracks in going from one side to the other of Huntington Avenue. There was no direct evidence when or by whom it had been constructed. It appeared, however, that the plan referred to in the layout showed the reservation as it existed at the time of the accident; and that meant, of course, or the jury could find that it meant, that the plan showed, and the order for the layout adopted, the cross walk as a paved and flagged means of passage over and across the reservation for the use of pedestrians having occasion to cross the avenue; in other words, that this cross walk was one of the "breaks" in the reservation, just as there were doubtless provided at the intersection of cross streets other and wider breaks for the use both of pedestrians and of vehicles. If so, the fact that there was at the ends of the cross

walk no break or interruption in the line of the curbing that marked the side lines of the reservation could not be decisive against the right of pedestrians to use the cross walk. The curbing resembled the ordinary edge of a sidewalk. And if the cross walk was one of the "breaks" provided in the layout for crossing and thus for that use excepted from the reservation itself, then the walk was a part of the surface of the street, intended and laid out for the use in common of pedestrians and of the defendant's cars, like other parts of the street. It would follow that the defendant in running its cars over the cross walk had no rights which were either exclusive of or paramount to the rights of pedestrians passing thereon. This is in harmony with the reasoning of the decisions in *Eustis* v. *Milton Street Railway*, 183 Mass. 586, 589, 590, and *Farrington* v. *Boston Elevated Railway*, 202 Mass. 315, 319.

The question whether the character and condition of the cross walk, and the facts that it manifestly was intended for the use of pedestrians only and that it passed at grade over the tracks of an electric street railway which it is contended had exclusive rights over some other parts of the reservation, required any special care on the part of the plaintiff, was for the jury. So too the jury could consider the fact that the defendant and its servants were bound to take notice of the existence and character of the cross walk, if it had been duly laid out and constructed as a crossing for pedestrians.

It does not appear that there was any error in the exclusion of the testimony offered by the plaintiff in rebuttal, or that he was harmed by the exclusion.

The case should have been submitted to the jury.

*Exceptions sustained.*