GEORGE G. FOX COMPANY *vs.* BOSTON AND NORTHERN STREET RAILWAY COMPANY.

Suffolk.    January 19, 1914. — February 27, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Salem Turnpike. Lynn and Boston Railroad Company. Boston and Northern Street Railway Company. Negligence*, Street railway.

The turnpike established under the charter of the Salem Turnpike and Chelsea Bridge Corporation, St. 1801, c. 63, (2 Mass. Special Laws, 506,) was a public highway for all persons paying the prescribed toll, and by St. 1868, c. 309, was made a free public highway. St. 1859, c. 202, incorporating the Lynn and Boston Railroad Company, gave that company a right to construct a street railway on "said Salem and Boston Turnpike, so far as may be practicable without detriment to other public travel," and, when the county commissioners by an order made in 1898 gave that company a new location for its tracks within but at the side of the highway, that company obtained no right of private property in the soil of the highway but only a license to lay tracks for the purpose of street railway travel in a street already appropriated for public travel.

The Boston and Northern Street Railway Company, as the successor of the Lynn and Boston Railroad Company, has in its location upon the Salem Turnpike, which is separated from the part of the street devoted to general travel by a curbstone eight or ten inches high and a line of trolley poles, a mere easement to use that part of the highway subject to the rights of general travellers on the highway; and a motorman operating one of the cars of that company is bound to exercise reasonable care to avoid injury to a wagon that has been left standing partly upon the street railway track owing to no fault of the driver in charge of it.

If a motorman is operating a car of a street railway corporation, upon a location granted to the corporation, by a decree of county commissioners, within but at the side of a highway with provision for suitable passage for abutters across the location at certain places, at a time when, on account of a fog, he can see only one hundred feet ahead, and, running the car at a speed of almost twenty-five miles an hour and failing to notice the warnings of a driver whose wagon has been left by a runaway horse partly upon the track, the motorman does not reverse the power until he is within twenty feet of the wagon and does not stop the car until it has demolished the wagon and run about two car lengths beyond it, this, in an action against the railway corporation by the owner of the wagon, is evidence of negligence on the part of the motorman.

DE COURCY, J.    This action is for damages to property arising out of a collision of one of the defendant's cars with a wagon

owned by the plaintiff, at about 4.20 o'clock on the morning of January 12, 1908. The accident occurred on the main road, known as the Salem Turnpike, that runs between Boston and Lynn. The defendant's location is on the westerly portion of the highway; and between it and that part of the street devoted to general travel there is a curbstone eight or ten inches in height, and a line of trolley poles.

There was evidence to warrant the finding of the following facts: The plaintiff's wagon, driven by its employee, one Bradeen, was proceeding from Boston to Lynn and had reached the vicinity of the Saugus River, when one of the defendant's cars passed, going in the same direction. The morning was dark, rainy, sleety and foggy. As the trolley wheel ran along the wire and broke the ice therefrom, there was a hissing noise accompanied by blue fire. Just as the car went by, the plaintiff's horse shied to the right into a fence, throwing the driver to the ground and causing him to lose the right hand rein. The horse thereupon crossed to the left side of the street, dragging the driver about ten feet; it went over the curbing and ran with the wagon down the track for a distance of three or four poles. The wagon then struck one of the poles and was brought to a standstill, with the horse and the front wheels of the wagon in the portion of the highway wrought for general travel, and the hind wheels on or near the track. The driver unhitched the horse and tied him to the fence. About that time he saw another car of the defendant coming, and he went back about thirty feet, — as far as he could get in his condition, — waving his hands for the motorman to stop. The car did not stop until after it had struck the wagon and run about two car lengths beyond. The driver testified that the power was not reversed until the car was within twenty feet of the wagon. The motorman said that he did not see the approaching driver, but that he first saw the wagon about one hundred feet away, and then put on the reverse. It was admitted that the car came along at the rate of from twenty-two to twenty-five miles an hour.

The first contention of the defendant is that the plaintiff's driver was a trespasser at the time and place of the collision, and that the motorman owed him and his employer no duty except to refrain from wilful, wanton and reckless misconduct. This

makes it necessary to consider what were the legal rights of the defendant in that part of the highway wherein its tracks were located. By St. 1801, c. 63, (2 Mass. Special Laws, 506,) the Salem Turnpike and Chelsea Bridge Corporation was incorporated for the purpose of laying out and making a turnpike road from Salem to the Charles River Bridge. The statute provided that the corporation should "enjoy all the privileges and powers which are by law incident to a corporation, for the purpose of laying out and making a Turnpike Road, and building the bridges aforesaid, and keeping the same in repair." The turnpike road so established by public authority was a public highway. Every traveller, on paying the toll levied to reimburse the cost of construction and maintenance, had the same right to use this as he had to use any other public highway. It is to be regarded as a public easement, and not as private property. *Commonwealth* v. *Wilkinson*, 16 Pick. 175. *Newburyport Turnpike Co.* v. *Eastern Railroad*, 23 Pick. 326.

In the act incorporating the Lynn and Boston Railroad Company, the predecessor in title of the defendant, it was provided that the railway should be constructed on this Salem and Boston turnpike, "so far as may be practicable without detriment to other public travel;" and provision was made for compensating the turnpike corporation for such use of the travelled road. St. 1859, c. 202, § 3. In pursuance of that statute, an agreement was subsequently entered into whereby the turnpike company gave to the railway company a right to use the road for horse railway purposes. In 1868 the Legislature enacted that the turnpike should become a public highway, upon the acceptance of the award therein provided, and subject to the leasehold and chartered rights and liabilities of the Lynn and Boston and the Boston and Chelsea Railroad Corporations. St. 1868, cc. 309, 335. The change of the turnpike to a common public highway was a continuance of the same public easement, under a modification of form. *Murray* v. *County Commissioners*, 12 Met. 455. *Adams* v. *Emerson*, 6 Pick. 57. *Central Bridge Co.* v. *Lowell*, 15 Gray, 106.

At no time did the turnpike corporation have the fee in the soil, or anything more than an easement for a right of way for public use; and at no time did it undertake to give to the defendant any greater right than an easement in its location. *Johnson* v. *Salem*

*Turnpike & Chelsea Bridge Co.* 109 Mass. 522.   When the county commissioners, in 1898, gave to the defendant's predecessor a new location for its tracks within, but at the side of, the highway, the railway company obtained no right of private property in the soil of the highway, but only a right in the nature of a license to lay tracks for the purposes of its travel in a street already appropriated to the use of public travel.  St. 1898, c. 260.  *Sawin* v. *Connecticut Valley Street Railway,* 213 Mass. 103, and cases cited. *New York, New Haven, & Hartford Railroad* v. *Cohasset Water Co.* 216 Mass. 291.  Accordingly the plaintiff's driver was not a trespasser in the highway where the accident occurred; and the motorman owed to him the duty of exercising reasonable care. *Conklin* v. *Old Colony Railroad,* 154 Mass. 155.

From the facts already stated as to the conduct of the driver, Bradeen, it is clear that the question of his due care was for the jury.  It was through no fault of his that the horse got on the track, and it could be found that he did all that reasonably could be expected under the circumstances to avoid a collision.  *Lawrence* v. *Fitchburg & Leominster Street Railway,* 201 Mass. 489. *Keeney* v. *Springfield Street Railway,* 210 Mass. 44.  The only negligence on the part of the defendant that is argued is that of the motorman on the car that collided with the wagon.  The evidence to support this contention is meagre, and the case is close on this issue.  The motorman had no reason to anticipate that any vehicle would be driven on the track at the place of the accident.  And yet, as in this instance, a person or vehicle might be on or dangerously near to the track without fault.  Further, it appears in the decree of the county commissioners that provision was made for suitable passage across the railway location at certain places for the use of abutters on the marshes.  What is most material is that, while the motorman could see only one hundred feet ahead on account of the fog, he ran the car at a speed of almost twenty-five miles an hour, that he failed to observe the driver's warning, and that he did not reverse the power until within twenty feet of the wagon, according to Bradeen's testimony. We cannot say as matter of law that the facts would not warrant a finding of negligence on the part of the motorman.  *Keeney* v. *Springfield Street Railway, ubi supra.  Welch* v. *Boston Elevated Railway,* 214 Mass. 168.

In accordance with the report* judgment is to be entered for the plaintiff in the sum of $250.

*So ordered.*

J. W. Keith & G. S. Harvey, for the plaintiff.
D. E. Hall, for the defendant.

———

* Of *Bell,* J., who ordered a verdict for the defendant and reported the case for determination with a stipulation for the entry of judgment for the plaintiff in the sum of $250 if the judge erred in ordering a verdict for the defendant.