This is a suit for damages for personal injuries received by plaintiff, which he alleges resulted from the negligence of the several defendants, C.E. Higdon, the Shreveport Railways Company, and the City of Shreveport. Plaintiff prosecutes this appeal from a judgment sustaining exceptions of no cause or right of action on the part of the defendant Railways Company and the defendant City. Similar exceptions filed on behalf of the defendant Higdon were overruled, and, therefore, are not at issue on this appeal.
The significant allegations of plaintiff's petition are that on April 3, 1946, shortly after 11 o'clock, p.m., plaintiff, while standing within a so-called "safety zone", at or near the center of Texas Street at its intersection with Marshall Street, immediately in front of the post office, in the City of Shreveport, for the purpose of boarding one of the defendant Railways Company's trolley busses, was struck by an automobile carelessly, recklessly and heedlessly driven by the defendant Higdon, and severely injured to such extent that the amputation of his right leg was necessitated.
Plaintiff's allegations of negligence with reference to the defendant Shreveport Railways Company, as owner and operator of the trolley bus system in the City of Shreveport, are set forth in Article 19 of the petition, which reads as follows:
"Petitioner now shows that Defendant Company was and is guilty of the following acts of gross carelessness and culpable negligence which, combined with the said acts of carelessness and negligence of Defendant Higdon, as hereinabove set forth, caused petitioner to suffer and sustain the injuries hereinabove set forth and detailed, viz.:
"1. By not protecting petitioner, and all others who board trolley cars at the intersection of Texas and Marshall Streets, by erecting guard rails around the space called by Defendant Company 'Safety Zone', or at least at the ends and on the side toward the curb of the street, or by not erecting a platform of concrete or wooden material, high enough to prevent any automobile recklessly driven from entering upon and crossing the space designated as 'safety zone' and thereby striking and hitting any person standing thereon or therein for the purpose of boarding the trolley car when it reached that point;
"2. By the exercise of an exclusive right granted it by the Defendant City to make a left turn at the intersection of Texas and Marshall Streets into Marshall Street, thereby rendering it more convenient to Defendant Company to make the said left turn from Texas Street into Marshall Street, from the center of Texas Street, than it would be, that is, if the trolley car was pulled to, or near the curb before making the said left turn, and consequently the special privilege granted Defendant Company by the Defendant City to make the said left turn from Texas into Marshall Street for its own convenience, was and is being exercised by Defendant Company to the hazard and peril of persons who board the trolley at that intersection, for if the trolley was pulled up to, or near the curb, then persons boarding the trolley at that intersection could and would do so in perfect safety and free from all danger of traveling automobiles, or other vehicles, striking them as they wait for the coming of the trolley, and that it was and is culpable negligence and carelessness of Defendant Company, of which it was and is guilty on the said occasion when your petitioner received his said injuries, to make the said left turn from the center of Texas Street instead of making it from or near the curb on the north or northerly, side of Texas Street, and which carelessness and negligence was and is one of the contributing causes of *Page 794 
Petitioner receiving his said injuries. In the alternative,
"3. By failing to pull the said trolley up to or near the curb on the northerly side of Texas Street at the Marshall intersection for the purpose of letting off and taking on passengers on the occasion when Petitioner received his said injuries, for if that had been done, then it would have been impossible for the Defendant Higdon to have struck Petitioner on the occasion in question, and hence Petitioner would have thereby completely escaped the injuries he received as hereinabove set forth, and therefore it was and is culpable negligence and carelessness on the part of Defendant Company not to pull the trolley up to, or near the curb at the place named, for the purpose of letting off and taking on passengers, and especially so on the occasion in question, which negligence and carelessness of the Defendant Company was and is one of the contributing causes of Petitioner being injured on the occasion in question."
As against the defendant City of Shreveport, plaintiff alleges that it was the duty of the defendant City to have ordered the erection of proper guard rails and protective devices around the space marked as a safety zone, or to order defendant Company to route its trolley busses to the curb of the sidewalk at the intersection in question for the purpose of permitting the boarding and deboarding of passengers at such point, and that the failure to take either of these allegedly necessary precautions constituted actionable negligence. The necessary predicate for the above allegations was established by the petition in setting forth the facts that the defendant Railways Company operated by virtue of a franchise or grant from the City and was subject to the regulation and control thereof.
Distinguished counsel for plaintiff argues that negligence is a question of fact and that the allegations of plaintiff's petition, which must be accepted as true for the purpose of determining the exceptions, properly set up certain facts which constituted negligence on the part of the defendant Company and the defendant City.
[1] We do not agree with this interpretation. The question in the instant case does not concern the establishment of facts alone, but whether the alleged facts, the truth thereof being conceded for the purpose of ruling upon the exception, would sustain a legal conclusion of negligence on the part of said defendants.
It is worthy of consideration to note that the alleged acts of negligence on the part of the defendant Company and the defendant City are not active and positive in character, but rather are passive and negative. In this respect it is evident that there is a clear distinction in the type and character of negligence charged, since the negligence of the defendant Higdon is alleged to have arisen from acts of commission, i. e., reckless, careless and heedless operation of his automobile, while the defendant Company and the defendant City are alleged to be culpable solely by reason of their omission to take or to enforce, respectively, proper safety precautions.
Stripped of non-essential details and surplusage of allegations, the definite charges of negligence against the defendant Company fall under two headings, namely:
(1). That the Company failed to provide a properly protected safety zone near the center of the street intersection at the point of the accident, or, in the alternative,
(2). That the Company failed to route its trolley busses in such manner as to permit the boarding thereof by prospective passengers directly from the curb of the sidewalk rather than from a location near the center of the street.
In connection with these allegations of negligence, the petition sets forth in minute detail the method of operation of the transportation system of the defendant company within the City of Shreveport. The pertinent facts in this connection are that the Company operates electric busses which derive their electrical power from overhead trolleys making contact with electric lines which are strung above the center of the streets along the routes of the several lines operated. One of plaintiff's contentions is that these wires on all streets except Texas Street, which is the main business thoroughfare of the City, are so located as to permit the busses to pull to the sidewalk curb for the purpose of receiving or discharging passengers, and that *Page 795 
this method of operation is carried out at all points on all of the several routes except on Texas Street, where so-called "safety zones" are marked out in strips near the center of the street, which zones are outlined by yellow painted stripes upon the street pavement.
It is contended that the adoption of either of the precautionary measures above suggested would have prevented the injury to plaintiff. In our opinion, this contention is pure speculation, conjecture, and, in the final analysis, becomes a reductio ad absurdum.
It cannot reasonably be argued that a plaintiff states a cause of action in every case in which he can imaginably conceive of some failure on the part of a defendant to do or refrain from doing a certain thing which would have negatived the possibility of the occurrence of the particular accident sued upon. The adoption of such a doctrine would inevitably result in the imputation of negligence in every case.
[2] It is our conception of the theory of the law of negligence that liability must be alleged to arise from the commission of some negligent act or the omission of the performance of some duty. This theory of law reduces the question before us to a determination of the simple fact as to whether the defendant company owed a duty to this plaintiff to build a protective platform in the center of Texas Street, or to pull its busses to the sidewalk curb. Conceding the point that the defendant Company could have built a protective platform, or that it could have pulled its busses to the sidewalk curb, the question still remains: Did the failure of the defendant company to take one of the suggested precautions constitute actionable negligence?
[3] We are constrained to answer the question in the negative.
[4] In its relations with prospective passengers unquestionably the defendant Company is charged with the legal duty of exercising due care, but we cannot find in this instance, under the facts alleged, that the Company has been guilty of a breach of this duty.
There is no suggestion in the petition that the particular "safety zone" involved in this case, or others of a similar nature, have been proven by past experience to constitute places of danger or hazard to waiting passengers. One isolated instance of injury cannot be construed as justifying a conclusion that the particular locus in quo subjected the public to a peril which it was negligent of the Company to fail to eliminate.
True, the adoption of either of the suggested precautions might have prevented this particular accident. But, such precautions would give no assurance against other accidents of a similar nature. If the theory of plaintiff should be adopted, it would logically follow that in future the same defendant Company could be held liable if a recklessly driven automobile should break through the guard rail of a safety island or climb the curb of a sidewalk. Our law reports are replete with cases in which reckless drivers have performed feats of destruction and injury under circumstances even more unusual.
Diligent search has failed to reveal any case, nor have we been cited to any by learned counsel, in which a defendant has been held guilty of negligence by reason of its failure to protect prospective patrons against every consequence of carelessly and recklessly driven vehicles on the public streets and highways.
[5] We feel that these reasons serve to substantiate our conclusion as to the correctness of the judgment sustaining the exception filed by the defendant Company on the ground that plaintiff's petition has failed to set out facts constituting actionable negligence. But, in deference to distinguished counsel for plaintiff, who has filed an elaborate and sincerely argued brief in the case, we point out that the exceptions are also properly taken on the ground that the charges made, even if held to constitute actionable negligence, would not be sufficient to sustain the essential requirement of proximate cause.
In the light of the allegations of the petition there existed only one proximate cause of the accident, the careless, heedless, reckless driving of the defendant Higdon. *Page 796 
The alleged failings of the defendant Company and the defendant City are so remote as to preclude liability on the part of either. To this effect we cite the following cases which definitely sustain this conclusion: Cruze v. Harvey Jones, 16 La. App. 409, 134 So. 730; Lasyone v. Zenoria Lbr. Co., Inc., 4 La. App. 455; Bodin v. Texas Co., La. App. 186 So. 390; Also see 45 Corpus Juris, verbo "Negligence", page 931.
Since we have hereinabove held that the defendant Company is not chargeable with negligence for its failure to take certain specified and additional precautionary measures in connection with the operation of its busses, it necessarily follows that the defendant City could not be held liable for negligence by reason of its failure to require and enforce such measures through the adoption of municipal ordinances or regulations.
[6] But we may further predicate this conclusion upon the well-established principle that a municipal corporation cannot be held liable in tort for its failure or misuse of powers strictly governmental in character. This doctrine is thoroughly discussed in American Jurisprudence, Volume 37, page 727, and Volume 38, page 572, and has been enunciated and applied in a number of cases in this State, among which we find Howard v. City of New Orleans, 159 La. 443, 105 So. 443; City of New Orleans v. Kerr, 50 La. Ann. 413, 23 So. 384, 69 Am.St.Rep. 442.
[7] Unquestionably the control and regulation of the defendant Company by the City of Shreveport is purely a governmental function. The City of Shreveport has no proprietary interest in the operation of the bus system, and therefore cannot under any theory be held chargeable with negligence.
In addition, with respect to the defendant City, we point out the applicability of our observations hereinabove with respect to the failure of the essential requirement of establishing the alleged negligence as a proximate cause.
Counsel for plaintiff complains that the ruling on the exception derives plaintiff of his right to prove the facts alleged. This is not the proper view, inasmuch as defendant is favored by the compulsion upon the Court to accept the facts alleged as being true. It therefore follows that the proof of truth not being required, but being already established for the purpose of the exception, the facts, accordingly, must be given that interpretation most favorable to plaintiff.
Only one other point occurs to us as necessitating attention. Counsel for plaintiff argues that the learned Judge of the District Court based his judgment, at least in part, upon matters of common knowledge of which he took judicial notice. It is contended by counsel that these matters were not properly subject to the doctrine of judicial notice, and, consequently, that it was error on the part of the learned District Judge to consider them. Careful reference to the able opinion of our distinguished brother does not indicate that he had any purpose in his observation of these matters aside from detailing the physical surroundings of the situs of the accident in the commendable interest of clarity and certainty.
But, however this may be, since we have disregarded these matters in our assignment of reasons for the conclusion reached, it is evident that this particular ground of complaint is immaterial.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.