ANNIE BECKER *vs.* CITY OF BOSTON & another.

Suffolk.    March 3, 1947. — April 8, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPAI DING, JJ.

*Way*, Public: defect, reserved space.   *Street Railway*, Repair of way. *Boston Elevated Railway Company.*

A reserved space established by the city of Boston under St. 1894, c. 324, § 1, in the middle of Huntington Avenue, a paved public way, for the use of street railways remained a part of the public way and it was the duty of the city to keep a curbing which it had placed at the boundary of the reserved space in such repair that the curbing would be reasonably safe for travellers thereon.

The Boston Elevated Railway Company was under no obligation to keep in repair a curbing at the outer boundary of a reserved space established by the city of Boston for the use of street railways on Huntington Avenue, a paved public way.

A crack one and one half inches wide at the top, two and one half to three inches long at right angles to the street and four or five inches deep, between two edgestones at the boundary of a reserved space for a street railway on Huntington Avenue in Boston and beside a platform provided for persons intending to travel on the street railway, could not properly have been ruled as a matter of law not to be a defect in the public way with respect to a woman who was caused to fall when her shoe, with a narrow heel of a type generally worn by women, was caught in the crack while she was waiting to board a street car.

TORT.   Writ in the Superior Court dated February 16, 1945.

The action was tried before *Good,* J.

*K. Hern,* Assistant Corporation Counsel, for the city of Boston.

*I. Bernstein,* for the plaintiff.

*D. L. Martin,* for Boston Elevated Railway Company.

DOLAN, J.    This action of tort is brought to recover compensation for personal injuries alleged to have been sustained as a result of the negligence of the defendants. At the close of the evidence each of the defendants filed a motion for a directed verdict in its favor.    The motion of the defendant railway company was allowed and the plaintiff duly excepted.    That of the defendant city was denied and exception was duly taken by it.    The jury returned a verdict for the plaintiff against the city.    The parties entered into a stipulation as follows: "In the event the court erred in directing a verdict for the defendant, Boston Elevated Railway Company, and the jury brings in a verdict for the plaintiff against the city of Boston, then the defendant, the Boston Elevated Railway Company, shall pay said verdict."

The jury could have found the following facts: At about 2 P.M. on November 13, 1944, the plaintiff left the Peter Bent Brigham Hospital located on Huntington Avenue at or near the corner of Francis Street, crossed Huntington Avenue, and proceeded to a so called "safety zone" (a platform) located near the middle of the street "provided for persons intending to travel to intown Boston on the Elevated."    As she stood there, a warning bell was sounded by an inbound street car "for the purpose . . . of getting her off the safety zone."    Proceeding to leave the platform, as did others there, she turned toward the southerly sidewalk.    "Looking out for her safety" she observed "the heavy vehicular traffic approaching, and placed her right foot down on the macadam street."    The heel of the shoe on her left foot caught in a crack in the edgestone, which is the outer curbing of the reservation, and she fell forward to her knees and was injured.    The "crack was a ragged break between two adjacent edgestones."    That condition had existed for two months before the accident.    The "break . . . was one and one half inches wide on top, two

and one half to three inches long at right angles to the street, and four or five inches deep." The plaintiff was wearing shoes with French heels, which were about one inch wide at the bottom. They were of a type generally worn by women and were in good condition immediately before the accident.

Each of the defendants contends that it owed no duty to the plaintiff with respect to the edgestone in question. Relevant facts bearing on that subject are these: In 1894 the board of street commissioners of the defendant city ordered Huntington Avenue widened and extended through an area including the locus of the accident here involved. The order provided in part as follows: "And this board further orders that between Copley Square and Francis Street there be reserved under the authority conferred by chapter 324 of the Acts of the year 1894 in the middle of said avenue a special space for the use of street railways and for grass, of the width of twenty-five feet, with breaks therein as shown on the plan hereinbefore referred to." Accordingly Huntington Avenue was widened as thus ordered and the reserved space was established. In 1896 the city installed edgestones or curbings, including that at which the plaintiff fell, along the outer boundaries of the reservation, entirely within the reserved space, the outer facing of the edgestones marking the outer limits of the reservation. At times since the installation of the edgestones the city has made repairs to these edgestones, and in 1944, in connection with work on Huntington Avenue, some of these edgestones were reset for grade by the city. The railway company "laid the macadam surface of the area between the edgestones." Huntington Avenue between Copley Square and Francis Street is "one hundred feet in width, and is built with a central reserved space twenty-five feet wide for street cars, two roadways each twenty-five feet wide, and two sidewalks each twelve and one half feet wide . . . .. The reserved space upon which the street cars run has been loamed with the intention of seeding it to grass." "The pedestrian crosswalks on Huntington Avenue from the sidewalk to the reservation at the point

nearest the scene of the alleged accident were respectively ninety feet away to the west, and four hundred and twenty feet away to the east, at points where the reservation terminated and vehicular crossovers were established." There was no crosswalk at the point where the plaintiff stepped into the street.

Statute 1894, c. 324, § 1, provides as follows: "The board or officers authorized to lay out streets, townways or highways in a city or town may, whether any such street or way is laid out under the provisions of law authorizing the assessment of betterments or not, reserve between the side lines thereof special space for the use of persons riding on horseback, special space for the use of street railways, whether operated by animal power, electricity or any other motive power except steam, special space for drains and sewers, and electric wires used for any purpose, and special space for trees, grass and for planting." Statute 1923, c. 358, § 1, so far as here material, provides as follows: ". . . the Boston Elevated Railway Company shall keep in repair . . . the paving, upper planking or other surface material of the portions of streets, roads and bridges occupied by its tracks; and if such tracks occupy unpaved streets or roads, shall, in addition, so keep in repair eighteen inches on each side of the portion occupied by its tracks . . . ." There was evidence that Huntington Avenue between the reservation and the sidewalks was paved for vehicular traffic.

In *Farrington* v. *Boston Elevated Railway*, 202 Mass. 315, 317, the court, referring to the reservation on Huntington Avenue, said, "The avenue and cross over, including the granite curbing, were constructed by the city of Boston, upon which . . . rests the duty of keeping the streets in repair." In *Sears* v. *Boston Elevated Railway*, 313 Mass. 326, 327, the accident that was the subject of that case occurred on the reservation on Beacon Street in Brookline, and the court said in part, "The establishment of such a reservation was the means employed to regulate traffic upon the way. . . . The portion of the street occupied by the reservation continued as a part of the way." The

*Sears* case involved the interpretation of G. L. (Ter. Ed.) c. 82, § 34, as amended by St. 1935, c. 309, which provided in part as follows: "A person who with the intention of becoming a passenger is at a stopping place or upon a landing or platform, established or apparently constructed for the purposes of boarding or alighting from street railway cars, within or upon spaces so reserved for street railways shall have the rights of a traveler on the highway." Obviously that statute had no relation to the liability of a city or town for defects in the public way of which the reservation was a part. This is evidenced by St. 1941, c. 533, "relative to the rights of pedestrians on certain reserved spaces in public ways," whereby c. 82, § 34, was amended to provide that a "pedestrian who is injured by a street railway car within or upon any of the spaces so reserved for street railways shall have the rights of a traveler on the highway." The statutes just referred to merely imposed liability upon street railways for injuries caused by their cars to pedestrians upon the reserved space for the purpose either of becoming passengers of the railway company or of crossing the reservation. They do not change the basic rule as to the liability of a city or town for injuries sustained as a result of a defect in the public way. And such a reservation as that here is a part of the public way. For such defects the defendant railway company has no liability except that imposed by St. 1923, c. 358, § 1 (hereinbefore set forth), in the limited area therein defined, which did not extend to that part of the way where the plaintiff was injured. The directed verdict for the defendant railway company was ordered rightly.

It follows from what we have said above that the case against the city was rightly submitted to the jury unless it can be said as matter of law that the alleged defect was not such within the meaning of the statute, G. L. (Ter. Ed.) c. 84. The city makes no contention that the alleged defect could not have been prevented or remedied by the exercise of reasonable care and diligence. It simply argues, relying on *Galante* v. *Brockton,* 305 Mass. 480, 481, *Vellante* v. *Watertown,* 300 Mass. 207, 208, and *Sears* v. *Greenfield,* 287

Mass. 445, that there was no evidence of an actionable defect. We do not concur.

It was the duty of the city to keep the way in repair so that it may be "reasonably safe and convenient for travelers." G. L. (Ter. Ed.) c. 84, § 1. The character of the way and the kind and amount of travel at the location of an alleged defect must be considered in the determination of whether it is an actionable one. *MacDonald* v. *Boston,* 318 Mass. 618, 619. See also *Bagdikian* v. *Worcester,* 318 Mass. 707, 708. And as was said in the *MacDonald* case, a "pedestrian upon that part of a way serving principally for the traffic of vehicles is not in the same position to complain of an unevenness in the surface as one upon a sidewalk." In *Galante* v. *Brockton,* 305 Mass. 480, 481, where the condition complained of was a sinking of a curbstone to the extent of one inch and a separation thereof from the adjoining concrete block of but an inch, the condition did not appear to have existed at a point which the "plaintiff would be obliged to pass over in order to cross" an intersecting street. In that case the condition was at the outer edge of a sidewalk "but not at a cross walk or other place where travellers have occasion to cross the curb." In the present case the break in the curbing was at a place where pedestrians would ordinarily be obliged to step on or over the curbing in order to reach or leave the platform which was used for discharging and taking on passengers of the railway company. See *Callagy* v. *Boston,* 297 Mass. 53, 55. In *Vellante* v. *Watertown,* 300 Mass. 207, the alleged defect in a sidewalk was a tilting of a granolithic slab for three fourths of an inch above the level of the sidewalk. In that case, in the opinion of the court, the imperfection was too slight to be held an actionable defect. In the present case the break was a "ragged" one, one and one half inches wide at the top and four or five inches deep. The jury could find that its width and depth were sufficient to allow the entry of the French heel on the shoe worn by the plaintiff to a depth sufficient to cause her to be thrown forward into the vehicular roadway, and that shoes with such heels were commonly worn by women. They could also have

regarded the depth of the break in the curbing as an important element. See *Crowell* v. *Malden*, 273 Mass. 456, 457–458; *Duffy* v. *Boston*, 275 Mass. 13, 14; *Sylvia* v. *Boston*, 278 Mass. 76, 78. *Sears* v. *Greenfield*, 287 Mass. 445, also relied upon by the city, does not support its contentions. In that case the alleged defect was a rise in one of the concrete blocks of a sidewalk of from three quarters of an inch to one and a half inches above another block "located immediately southerly to it." In overruling the defendant's exceptions to the action of the judge in ordering judgment for the plaintiff on the report of an auditor, this court (at page 447) recognized that "Even on the same street there might be a projection in a part of the highway wrought or used for vehicular traffic which would not be sufficient in extent to amount to an actionable defect and yet that same extent of projection in an adjacent portion of the highway used exclusively by pedestrians would constitute such a defect. *Howe* v. *Marlborough*, 204 Mass. 26." On the facts the instant case is stronger for the plaintiff than the *Sears* case. In the present case the location of the curbing was beside the platform reserved for the use of pedestrians. No contention has been made by the city that the jury would have been warranted in finding that the plaintiff was guilty of contributory negligence, and no issue as to due notice of the accident is presented.

In the circumstances of the instant case against the city we are of opinion that it could not have been ruled properly as matter of law that the break in the curbing was not an actionable defect, and that therefore the case was submitted to the jury rightly. See *Smith* v. *Fall River*, 295 Mass. 88, 90, and cases cited.

The foregoing opinion, in so far as it holds that it could not have been ruled properly that the break in the curbing was not an actionable defect, is that of a majority of the court.

*Exceptions of the defendant city overruled.*
*Plaintiff's exceptions overruled.*
*Judgment for the plaintiff against the defendant city on the verdict returned by the jury.*