Mary E. HILTNER, Appellant,

v.

KANSAS CITY, Missouri, and The Kansas City Public Service Company, Respondents.

No. 45089.

Supreme Court of Missouri.

Division No. 2.

July 9, 1956.

Rehearing Denied Sept. 10, 1956.

Irving Achtenberg, Kansas City, for appellant.

**424**

Benj. M. Powers, City Counselor, J. L. Parks, Asst. City Counselor, Kansas City, for respondent Kansas City.

Charles L. Carr, Kansas City, for respondent Kansas City Public Service Co.

STOCKARD, Commissioner.

Upon motion by each defendant, plaintiff's second amended petition for damages in the amount of $35,000 was dismissed by the trial court for failure to state a claim upon which relief could be granted. Plaintiff has appealed.

The pertinent parts of plaintiff's petition, as stated by plaintiff in her brief and adopted as a correct statement by both defendants, are as follows:

"(a) Plaintiff, while standing within a streetcar safety zone, at or near the southeast corner of 41st Street and Troost Avenue, for the purpose of boarding a streetcar operated by the defendant Public Service Company, was struck by an automobile which was proceeding and being driven northward in said street. (b) That said safety zone aforesaid was provided and maintained by defendants for the use and protection of persons using public service conveyances; (c) That said safety zone had been adopted by and was being used by said defendant Public Service Company as a place at which to board its streetcars, thus inviting passengers to use the same; (d) That at the South end of said safety zone and in said zone and public street, there was a vertical metal post and reflector sign erected and maintained by defendants to warn persons driving along said street of the existence of said safety zone and for the further purpose of barricading and protecting persons using said safety zone for boarding and leaving public service conveyances; (e) That prior to said accident aforesaid, said signpost had been struck by a vehicle so that said sign and post were no longer visible to drivers of vehicles and no longer served as a protection and barricade for said safety zone; (f) That said safety zone was not otherwise sufficiently marked, lighted and barricaded; that said safety zone was an inherently dangerous condition in, and obstruction of, said street and a public nuisance; (g) That the erection and maintenance of said sign post was not authorized by an ordinance of the City of Kansas City, Missouri; (h) That defendants, and each of them, had notice and actual knowledge of the afore-described condition of said safety zone; (i) That due to the negligence of defendants as hereinafter set forth, said automobile aforesaid was caused to pass through said safety zone, striking and injuring plaintiff."

 In determining if a petition states a claim upon which relief may be granted, the averments of the petition are to be given a liberal construction, and they should be accorded their reasonable and fair intendment. Fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its averments invoke substantive principles of law which entitle the plaintiff to relief. A petition is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact. Zuber v. Clarkson Construction Company, 363 Mo. 352, 355, 251 S.W.2d 52, 54.

The city contends that the maintenance of the vertical post and reflector sign at the south end of the safety zone was an exercise of a governmental function for which a failure to maintain properly is not actionable negligence. Plaintiff concedes that the "regulation of traffic is a governmental function and accordingly so is the maintenance of a traffic signal," but she contends that she did not plead "negligent maintenance of a traffic signal, but negligent maintenance of a safety zone." The issue thus presented is whether the maintenance of the safety zone was a corporate or governmental function.

■ Several writers in the field of municipal law have criticised the principle that for the purpose of determining tort liability of a municipality there should be a distinction made between governmental and corporate functions. See the articles in 3 Mo.L.Rev. 275; 16 Oregon L.Rev. 250; 3 Current Legal Thought 113 and 823. However, this distinction is made in Missouri, and it is well established that a municipality is not liable in tort for the negligent performance of its governmental as distinguished from its corporate functions. Cassidy v. City of St. Joseph, 247 Mo. 197, 152 S.W. 306; Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485; Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778; Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32; Blackburn v. City of St. Louis, 343 Mo. 301, 121 S.W. 2d 727; See also 18 McQuillen, Municipal Corporations, 3d Ed., § 53.23. And it has repeatedly been held, and plaintiff concedes, that the regulation of traffic is a governmental function. Prewitt v. City of St. Joseph, 334 Mo. 1228, 70 S.W.2d 916; Auslander v. City of St. Louis, supra; Carruthers v. City of St. Louis, supra; Blackburn v. City of St. Louis, supra.

In support of her position that the alleged acts of the city in this case constitute a negligent performance of its duties to provide and maintain its streets in a reasonably safe condition, for which acts it is liable in tort, plaintiff cites Mengel v. City of St. Louis, 340 Mo. 994, 111 S.W.2d 5; Boyd v. Kansas City, 291 Mo. 622, 237 S.W. 1001; Metz v. Kansas City, Missouri, 229 Mo.App. 402, 81 S.W.2d 462; and Adams v. Kansas City, Mo.App., 266 S.W. 2d 771. These cases all properly hold that a city is liable in tort for its failure to maintain its streets in a reasonably safe condition. Each case involves the situation where a traveler, either in a car or as a pedestrian, was injured by reason of the failure of the city to mark adequately an obstruction in the street or because it permitted the continued existence of a dangerous defect in the street. However, in each case the obstruction was not an instrumentality used solely for the direction of traffic, or the defect did not pertain to the use of the instrumentality in directing traffic. Therein lies the distinction between those cases and this one.

■ The purpose and effect of the establishment of a safety zone is to set aside a portion of the street for a particular use, that is, for the exclusive use of pedestrians. It is a regulation of traffic, both vehicular and pedestrian. Every safety zone is an obstruction in the street to a certain degree. That is its purpose. But as long as the obstruction has as its purpose, and is a reasonable device for the regulation of traffic, the city is not liable for its creation and maintenance, even though in doing so it may be negligent. This principle of liability of a municipality is recognized in 18 McQuillen, Municipal Corporations, 3d Ed., § 53.43, wherein it is stated: "As a general rule a city [acts] in a governmental capacity in authorizing and maintaining safety zones in streets and may not be subjected to liability with respect thereto. Thus a city is not liable to one injured in a safety zone, while waiting to board a bus by being struck by an automobile negligently driven by another, by reason of failure of the city to have erected rails and protective devices around the safety zone." See also Shaw v. City of New York, 165 Misc. 765, 1 N.Y.S.2d 311; Taylor v. City of Shreveport, La.App., 29 So.2d 792.

In Blackburn v. City of St. Louis, supra, the plaintiff was standing on the sidewalk and was injured by an automobile when it careened onto the sidewalk after striking metal markers outlining a safety zone in the street. Plaintiff contended that the city was negligent in that it had not maintained properly the safety zone markers and had permitted them to become in disrepair, discolored, unlighted, unpainted, partially sunken into the street and without reflectors. It was contended that these mark-

ers formed obstructions to travel and thereby caused the street and sidewalk to be in a dangerous, unsafe and defective condition. The city contended that it was not liable because it had installed the safety zone as a part of a general plan for public safety and traffic regulation, and was thus acting in a governmental capacity, and that the maintenance of the safety zone was a continuance of such governmental function. After careful consideration it was held by this court that the maintenance of the markers of the safety zone was an exercise of governmental rather than corporate functions, and that the city was not liable in tort for the negligent maintenance. We can see no distinction in principle between the Blackburn case and the present case. In each the plaintiff was in an authorized place, and in each the plaintiff was injured by a third person by reason of the alleged negligence of the city in failing to maintain properly a safety zone.

■ A safety zone is not in and of itself inherently dangerous. There are no facts alleged from which it could be inferred that the safety zone was not a reasonable device for the regulation of traffic. The only negligence of which the city is charged is that of negligent maintenance of the safety zone in its use as a device for the regulation of traffic, and for that negligence the city is not liable in tort. The petition does not state a cause of action against the city.

We turn now to the question of whether the petition states a cause of action against Kansas City Public Service Company. The acts alleged to have been performed or omitted were charged jointly against both defendants, but for the purposes of this discussion we shall consider the allegations as applying severally to the street car company.

Plaintiff alleges in general terms that the safety zone "was provided and maintained by defendants for the use and protection of persons using public service conveyances; that said safety zone had been adopted by and was being used by said defendant Public Service Company as a place at which to board its streetcars, thus inviting passengers to use the same." Defendant streetcar company contends that these allegations are mere conclusions, and that in addition the establishment and maintenance of the safety zone is a governmental function of the city which cannot be delegated, and it therefore had no duty or authority to provide or maintain the safety zone in the public street and is not liable to plaintiff for the negligence, if any, of the city in failing to maintain properly the safety zone. There is substantial support in the reported cases for this latter position. See Lucas v. St. Louis & Suburban Railway Company, 174 Mo. 270, 73 S.W. 589, 61 L.R.A. 452; Farrington v. Boston Elevated Railway Company, 202 Mass. 315, 88 N.E. 578; Webster v. Capital Transit Co., 91 U.S. App.D.C. 303, 200 F.2d 134; Taylor v. City of Shreveport, La.App., 29 So.2d 792; McMahon v. Surface Transp. Corporation of New York, 272 App.Div. 202, 69 N.Y.S. 2d 859; 13 C.J.S., Carriers, § 716; Annotations: 41 A.L.R. 376 and 75 A.L.R. 285. However, we shall assume for the purpose of testing the sufficiency of the petition, that the allegations are sufficient to establish that the streetcar company did provide and maintain the safety zone in the public street.

■ The allegation that the safety zone was "an inherently dangerous condition in, and obstruction of, said street and a public nuisance" adds nothing to the legal effectiveness of plaintiff's petition in stating a cause of action against the streetcar company. The term "inherently dangerous" has been defined in Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623, 628, as meaning "that danger inheres in the instrumentality or condition self, at all times, so as to require special precautions to be taken with regard to it to prevent injury; instead of danger

arising from mere casual or collateral negligence of others with respect to it under particular circumstances." See also Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479, 480; Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080, 1082. Here the allegations of the petition show that the danger would and did result only from casual or collateral negligence of others with respect to the use made by plaintiff of the safety zone.

The other allegations of the petition establish that the safety zone could not constitute a nuisance in the legal sense of that term. In order to constitute a nuisance there must exist a degree of danger likely to result in damage inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use. Brown v. City of Craig, supra. Therefore, even though we disregard the contention of the streetcar company that these allegations constitute mere conclusions, their presence adds nothing to the petition, and the sufficiency of the petition must depend upon the presence of other allegations, properly made, of negligence.

■ "It is an elementary principle of the law of torts that there can be no actionable negligence in the absence of the existence of some duty on the defendant's part owing to the plaintiff, which duty has been neglected or violated by the defendant, with the injury suffered by the plaintiff directly attributable thereto, and flowing therefrom." Meyer v. St. Louis Public Service Co., 241 Mo.App. 1057, 253 S.W.2d 525, 528. See also Slicer v. W. J. Menefee Const. Co., Mo.Sup., 270 S.W.2d 778, 780.

Plaintiff does not contend the relationship between the streetcar company and her was that of carrier and passenger, nor does she contend that she was injured by any instrumentality operated by the streetcar company. Plaintiff at most could have had a relation to the streetcar company of that of an invitee, 83 C.J.S., Street Railroads, § 195, and if not that, she would occupy the same relationship to the streetcar company as that of any other pedestrian on the public street, and in that event would have no standing to recover, in the situation we have here, from the streetcar company for her injuries. While there are several preliminary obstacles to plaintiff being classed as an invitee, such as the extent of the streetcar company's right of control over the safety zone and the nature of its possession and occupancy, if any (see Webster v. Capital Transit Company, 91 U.S. App.D.C. 303, 200 F.2d 134, 135), we pass over these questions and assume that plaintiff enjoyed the status of a business invitee, which is the most favorable status to plaintiff possible under the petition.

■ In her assumed status of a business invitee, under the circumstances alleged, what was the duty owed by the streetcar company to plaintiff at the time of the accident? "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care." 65 C.J.S., Negligence, § 50; see also Harper v. First Nat. Bank of Kansas City, Mo.Sup., 196 S.W.2d 265; Dixon v. General Grocery Company, Mo.Sup., 293 S.W.2d 415; and Restatement, Torts, § 343(b). The person in possession or control of land or premises, as an invitor, "is not an insurer of his business invitee's safety", Giles v. Moundridge Milling Co., 351 Mo. 568, 173 S.W.2d 745, 748; Dixon v. General Grocery Company, supra, and is liable for bodily harm caused to "business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will dis-

cover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land [premises] without exercising reasonable care (I) to make the condition reasonably safe, *or* (II) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility." (Italics added.) 2 Restatement, Torts, § 343. See also Devine v. Kroger Grocery and Baking Company, 349 Mo. 621, 162 S.W.2d 813, 818; Dixon v. General Grocery Company, supra; and Berberet v. Electric Park Amusement Company, 319 Mo. 275, 3 S.W.2d 1025, 61 A.L.R. 1269, and the cases cited therein.

In this case plaintiff alleges that her injuries were caused by the negligence and carelessness of the streetcar company in that it "failed to properly mark, designate, light, barricade and safeguard said safety zone;" that it "failed to maintain said safety zone properly marked, designated, lighted, and safeguarded;" that it "negligently maintained said safety zone as a dangerous condition and obstruction in said street and a public nuisance;" that it "failed to straighten said post and to replace said sign;" and, in substance, alleged that the streetcar company negligently failed to place a lantern, light or warning signal of any kind at or in the vicinity of the safety zone to warn persons using the street at night of the presence of the said dangerous condition and obstruction, and negligently permitted the safety zone to be and remain in the street without any light, warning sign, or barricade after it knew, or by the exercise of ordinary care could have known that the safety zone was dangerous to persons using it at night for the purpose of boarding streetcars and could have anticipated that injury might result to persons using the safety zone, and by the exercise of ordinary care could have straightened said post and replaced the sign or have placed a warning signal at

the post in time to have prevented the accident to plaintiff. In substance, plaintiff has alleged that the safety zone was not in a reasonably safe condition, and that the streetcar company was negligent in failing to warn, not the plaintiff, but the operators of automobiles on the public street.

We conclude that the petition is defective in that it fails to allege that the danger of automobiles driving into or through the safety zone was a concealed or hidden danger of which plaintiff was unaware, and that the streetcar company failed to warn her of this danger.

Another feature of this petition deserves comment. As we have determined, the city has the right and obligation to regulate traffic on the public streets, and this is a governmental function. The petition alleges that the safety zone was in the public street. It follows that there is no duty or authority on the part of the streetcar company to erect or maintain in a public street signs or barricades to warn prospective passengers or motorists, absent some right and obligation imposed by statute, ordinance or contract. Meyer v. St. Louis Public Service Co., supra; Slicer v. W. J. Menefee Const. Co., supra; 83 C.J.S., Street Railroads, § 213. Not only is there a failure to allege that any duty on the part of the streetcar company arose in any of the above mentioned ways, the allegation of the petition that the erection of the signpost was not authorized by ordinance of the City of Kansas City indicates the contrary. The fact that the streetcar company had placed in the public street, if it did, a signpost without right or authority, and that said signpost had been knocked down by some automobile, did not give rise to a duty to replace it when no duty to put the sign there had existed originally. The failure of the petition to show a duty on the part of the transit company arising by statute, ordinance or contract is a further deficiency.

We cannot see how in this case plaintiff is aided by the allegation that the streetcar company maintained or adopted the safety zone. It is not contended that by these acts the streetcar company made the zone more dangerous than it otherwise would have been. One of the complaints is that more should have been done, and that what was done is inadequate. Since no duty or obligation is alleged to make the installation of the safety zone or to keep it in repair, the petition is not aided by these statements.

Plaintiff also assigns as error the refusal of the trial court to set aside the dismissal of the petition and permit her to file a third amended petition. The proposed amendments were to the effect that there was "much travel" on the street at the place of plaintiff's injury, and that it was a common occurrence for automobiles to drive through the safety zone. Certain additions to existing allegations were also proposed so that, as amended, the petition would allege that the safety zone was "long" provided and maintained by the defendants "thereby inviting persons to use the same and impliedly representing that such use was not dangerous," and that the defendants negligently maintained the safety zone as an "inherently" dangerous condition in the street. For the reasons previously stated, the addition of these proposed new allegations would not result in the petition stating a cause of action.

The petition does not state a cause of action as to either defendant, and, therefore, the judgment of the trial court is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.